Argued and submitted January 19, affirmed April 6, reconsideraton denied
May 14, petition for review denied July 14, 1981 (291 Or 309)

## KNEZ et ux,
*Appellants,*
*v.*
## RELIABLE REALTY, INC. et al,
*Respondents.*

### (No. A7704-05868, CA 17106)

626 P2d 372

Christopher James, Portland, argued the cause for appellants. With him on the briefs were David R. Ambrose and James C. Maletis, P.C., Portland.

Donald C. Walker, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiffs appeal from a judgment for defendants on their claim for breach of fiduciary duty against defendant Forquer, a salesman for defendant Reliable Realty (Reliable). They assign error to the following:

1) Denial of their motion for a new trial;[1]

2) Entry of a judgment on a stipulated record rather than a summary judgment;

3) Finding that Forquer was not plaintiffs' agent, contrary to the allegations in the complaint;

4) Finding that the judgment in a prior action against plaintiffs and defendants by purchasers of plaintiffs' apartment complex, which terminated in a jury verdict for defendants, barred proof that Forquer made fraudulent representations to the buyers concerning the condition of the apartments;

5) Exclusion of evidence of the unauthorized nature of Forquer's representations;

6) Finding that plaintiffs' evidence of a fiduciary relationship between them and defendants was deficient; and

7) Holding that plaintiff's claim for attorney fees for defending the first lawsuit is precluded by the statute of limitations.

The essential facts are as follows:

In 1974, Forquer was a real estate agent and an investment counselor for the Munyans. He examined several properties and concluded that the Knezes' 7-plex would be an ideal investment for the Munyans. Although he had no listing and the Knezes had not contemplated selling the complex at the time, Forquer approached them and told them that he represented some people who would be interested in buying the apartments. Forquer requested an exclusive listing from them, but there is a dispute in the

---

[1] The assignment of error relating to failing to grant a new trial turns on the same grounds as the second and third assignments and will not be separately discussed.

evidence as to whether a listing was ever given. In any case, Forquer communicated an offer to purchase for $85,000, which the Knezes, who had not had the property appraised, declined, allegedly against Forquer's advice. Later, they counteroffered to sell for $90,000. The Munyans came back with an offer of $87,000 and an agreement was reached at that figure with the Knezes to pay a reduced real estate commission. A contract for sale was signed.

On March 13, 1975, the Munyans sued the Knezes, Reliable and Forquer for alleged misrepresentations made by the latter concerning the condition and profitability of the apartments. The Munyans maintained that Forquer was acting as the Knezes' agent and they were thus vicariously liable for his representations. The Knezes and Reliable filed cross-claims for indemnity, each claiming the other was the source of the misinformation. On March 24, 1976, the trial court granted the Knezes' motion for involuntary nonsuit against the Munyans on the strength of a clause in the contract that no representations were made other than those stated in the contract. A voluntary nonsuit was also granted on the Knezes' cross-claim and they were dismissed from the case. The trial court refused to dismiss the case against Forquer and Reliable on the stated ground that the clause was primarily for the Knezes' benefit, not that of the agent. There was also evidence from which the trial court could have found that Forquer was the agent of the Munyans as well and, in that capacity, owed duties to them independent of those owed to the Knezes. Ultimately, a jury verdict for Forquer and Reliable was returned.

On April 22, 1977, the Knezes filed this action seeking recovery of the commission paid Forquer and the costs of defending the earlier action. The basis for recovery was an alleged breach of a fiduciary duty of loyalty stemming from an agency relationship between the parties which the Knezes contend arose from Forquer's role in the sale of the property. (In the first case, the Knezes had taken the alternative position that Forquer was not their agent - and hence they were not vicariously liable to the Munyans for misrepresentation - or, if he was their agent, the representations were not authorized.) Reliable and Forquer interposed two demurrers, a plea in bar and a motion for

summary judgment, all of which were denied by various trial judges. Grounds alleged in these pleadings included: 1) that the Knezes were collaterally or equitably estopped to assert an agency relationship by their position in the prior lawsuit; 2) that the complaint failed to allege recoverable damages, which rendered the cause of action deficient; 3) that the Knezes' pleadings and testimony in the prior case constituted a conclusive admission of nonagency; and 4) that the claim was barred by ORS 12.220[2] because a voluntary nonsuit was taken on the indemnity cross-claim and it had not been refiled within 12 months.

The case was eventually set down for trial on November 23, 1977, on the third amended complaint. Upon convening court, the trial judge announced that he had reviewed the record of the prior case and the pleadings here and was disposed to hold that no agency existed. He stated he would nonsuit or direct a verdict against the Knezes. They argued that the evidence would show that Forquer was the agent of both themselves and the Munyans and had failed to reveal this conflict of interest. They attempted to dissuade the court from entering some kind of judgment without hearing the evidence. The trial court, however, was adamant and the following colloquy ensued:

"THE COURT: Why don't you do this, gentlemen? Work out a stipulated set of facts that would go to the jury and then you would have something to appeal to the Court of Appeals on, in the stipulated facts, instead of taking up all of your time to have a jury up here. And then let me direct a verdict of nonsuit. I think you are wasting your time.

"If you don't want to do that, let's call a jury in and get the issues out.

"MR. WALKER, [Forquer's and Reliable's attorney]: I think we can stipulate.

---

[2] ORS 12.220 provides:

"Except as otherwise provided in ORS 72.7250, if an action is commenced within the time prescribed therefor and the action is dismissed upon the trial thereof, or upon appeal, after the time limited for bringing a new action, the plaintiff, or if he dies and any cause of action in his favor survives, his heirs or personal representatives, may commence a new action upon such cause of action within one year after the dismissal or reversal on appeal; however, all defenses that would have been available against the action, if brought within the time limited for the bringing of the action, shall be available against the new action when brought under this section."

"MR. JAMES, [the Knezes' attorney]: Your Honor, I would call a jury because I don't think the Court would direct a verdict.

"THE COURT: I have stated I would nonsuit it.

"MR. JAMES: Okay, nonsuit. I am not challenging the Court. The premise that you are operating on is: No harm, no foul — in basketball, no blood, no foul — just because the Court doesn't see the damage. But the evidence will be that this man not only lied —

"THE COURT: Gentlemen, we could sit here and argue for three or four days. I am willing to do anything you want to do. I will call a jury and you put all your facts in there.

"I am satisfied, from the record that I have read, that I would probably grant an involuntary nonsuit or I will grant a directed verdict on about four different bases.

"But, *if you can stipulate to the facts and agree what you are going to present to the jury and let me go over it,* then that's fine. It doesn't make any difference. I am going to be here all day, anyway.

"I am just trying to save you a little time, Mr. James." Tr. 16-17. (Emphasis added)

Following a recess, the Knezes stipulated to what the evidence would be, and augmented the record by means of an offer of proof with a number of documentary exhibits and a recital by their attorney of the facts to which they would testify. On December 31, 1979, the trial court issued an order, holding:

"1. That the pleadings of this case and the record of [the first case] conclusively establish that [Forquer and Reliable] were not agents of [the Knezes]."

The court further found that the issue of fraud was conclusively determined by the jury verdict in the prior case, that the evidence did not support the allegations of the complaint and that "plaintiffs' cause of action concerning attorney's fees and costs is barred by the statute of limitations."

The form of the order submitted by counsel to the trial court labeled the judgment which was to be entered a "summary judgment." The trial court crossed out the word "summary," no doubt because it regarded the judgment as a judgment on a stipulated record. On appeal, most of the Knezes' contentions (including their second assignment of error) assume that the trial court misunderstood the nature

of the parties' stipulation in entering such a judgment. Our review of the record leads to the conclusion that it was the Knezes who misperceived the ramifications of their stipulation.

As we view it, the trial court determined that Reliable and Forquer were entitled to judgment as a matter of law and was prepared to enter an order accordingly. The Knezes argued that, if the judge heard the evidence, he would change his mind on the matter. The court then gave them the choice of calling a jury and offering all their testimony with a good chance that a verdict would be directed on the cause, or of summarizing the evidence and offering it by stipulation on which the court would pass judgment. The Knezes maintain that they entered the stipulation only for purposes of showing an issue of material fact which would preclude summary judgment.

■  Aside from what we view as a reasonably clear exposition by the trial court of its position, there are additional indications that the Knezes' present characterization of the proceedings is mistaken. First, there was no motion for summary judgment by either party before the court at the time the events in question occurred, Second, the Knezes' attorney remarked in discussing the stipulation that it was "in lieu of putting on my case." Third, most of the evidence entered by stipulation was in the form of an offer of proof; had this been a summary judgment proceeding, the stipulated evidence would have become part of the record without such an offer. Finally, the trial judge stated that he would have granted the original demurrers and was "inclined to think [he] would have granted a summary judgment, based upon the file." This remark occurred after the stipulation and implies therefore that he viewed the judgment to be entered as something other than a summary judgment. We conclude a trial to the court on a stipulated record was intended and that the order conformed to that proceeding.

■  In the context of the third assignment - that the court erred in finding no agency - the nature of this judgment is of critical importance. In this instance, the finding that no agency existed between Forquer and the Knezes is a determination of fact on a stipulated record, *Lokan v.*

*Roberts,* 270 Or 349, 527 P2d 720 (1974), and is supported by substantial evidence as follows: Forquer was clearly working for the Munyans and the fact that he represented unnamed buyers was communicated to the Knezes at the beginning. Forquer approached them and induced them to sell. The Knezes contend they are entitled to the inference that a listing agreement was signed, but that inference is directly contrary to the oral recital of their testimony by their counsel to the effect that Mr. Knez "would testify that he never authorized Mr. Forquer to represent to anyone that he had obtained a listing from [them]." Although not conclusive, their inconsistent position in the first action is additional evidence of the absence of an agency relationship. *Yates v. Large,* 284 Or 217, 223, 585 P2d 697 (1978).

■ The finding of no agency defeats the Knezes' sole cause of action and their fourth, fifth, and sixth assignments of error. Both their contentions that Forquer was a fiduciary regardless of whether he was an agent or not and that his statements to the Munyans were fraudulent are beyond the scope of the complaint which alleged an agency relationship and a breach of fiduciary duty arising therefrom. Since Forquer was not an agent, it follows that evidence of whether his statements were authorized is irrelevant.

■ Finally, the trial court's order suggests that the Knezes' claim for attorney fees in the prior action was a separate claim from the prayer for return of the broker's commission and that it fails on a separate ground. Only one cause of action was pled and the Knezes' arguments that they are entitled to recover these costs under some theory of common law indemnity, even in the absence of any agency, is beyond the scope of the pleadings.

Affirmed.