Argued and submitted October 26, 1992, affirmed March 17, 1993

PACIFIC WESTERN
DEVELOPMENT CORPORATION,
an Oregon corporation,
*Appellant,*

*v.*

SUMMIT EXCHANGE COMPANY,
an Oregon corporation;
J. Peterkort & Company,
an Oregon limited partnership;
and Peterkort Management Company,
an Oregon corporation,
*Respondents.*

(9102-00729; CA A72390)

848 P2d 1246

Jacob Tanzer, Portland, argued the cause for appellant. On the brief were Jack L. Orchard, Mark L. Cushing and Ball, Janik & Novack, Portland.

Philip N. Jones, Portland, argued the cause for respondents. With him on the brief were Stephen J. Klarquist and Duffy, Kekel, Jensen & Bernard, Portland.

Before Rossman, Presiding Judge, and De Muniz and Landau,* Judges.

LANDAU, J.

---

* Landau, J., *vice* Buttler, J., retired.

## LANDAU, J.

Plaintiff appeals from a declaratory judgment for defendants on a disputed provision in a pair of earnest money agreements. We affirm.

Defendants J. Peterkort & Company and Peterkort Management Company ("the Peterkorts") owned a large parcel of property located in eastern Washington County. Although zoned for single-family residential use, the property had been held for many years as farm property. Because the property had been devoted to farm use, the Peterkorts were able to take advantage of certain special assessment provisions for farmland located in areas zoned for more intensive use. ORS 308.370 *et seq* (*since amended by* Or Laws 1991, ch 459).[1] Those provisions allowed the property to be taxed at its value for farm use and not at its true cash value. ORS 308.370.[2] They also allowed the special assessment to continue as long as the property is devoted exclusively to farm use. When the property is no longer used exclusively for farm use, the law provided for imposition of a penalty of up to five times the tax savings realized in the most recent year of assessment. ORS 308.395(1).[3]

In 1990, brokers for plaintiff made an offer to purchase the Peterkorts' farm property in two parcels for residential development to be implemented in phases. In making the offer, plaintiff's brokers did not mention the subject of special assessments for farm property, or any penalties that

---

[1] We apply the law in effect at the time of the transaction at issue.

[2] ORS 308.370(2) provided in part:

"Any land which is not within a farm use zone but which is being used, and has been used for the preceding two years, exclusively for farm use as defined in ORS 215.203(2) shall, * * * for purposes of assessment, be valued under ORS 308.232 at its true cash value for farm use and not at its true cash value it would have if applied to other than farm use."

[3] ORS 308.395(1) provided:

"When land which has received special assessment as farm use land under ORS 308.370(2) thereafter becomes disqualified for such assessment, the assessor shall notify the owner thereof and there shall be added to the tax extended against the land on the next general property tax roll * * * an additional tax equal to five times (or such lesser number of times, corresponding to the number of years of farm use assessment applicable to such property) the total amount by which the taxes assessed against the land would have been increased if it had been valued without regard to ORS 308.370(2) during the last year in which the farm use assessment was in effect for the land."

would become due when the property was taken out of exclusive farm use. The brokers presented an earnest money agreement for each parcel, each of which contained this provision related to special assessments for farm property:

"Any real property tax assessment of the property (e.g., as farm or forest property) shall be paid by ☐ seller ☐ purchaser. (check one)"

However, neither box was checked. The Peterkorts rejected the offers.

Plaintiff's brokers asked the Peterkorts to name an acceptable selling price. The Peterkorts named a price, which they insisted was to be net, free and clear of any offsets, expenses or commissions. There was no discussion of farm taxes, special assessments or tax penalties. Plaintiff's brokers later informed the Peterkorts that the price was acceptable.

Plaintiff's brokers prepared new earnest money agreements for the two parcels, which included this provision:

"That portion of any real property tax or assessment or interest thereon which is attributable to a period or periods on or before closing but the assessment or due date for payment of which has been deferred shall be paid for by _____."

Plaintiff's broker typed "seller" in the blank. Defendant Summit Exchange, the Peterkorts' agent, prepared multiple addenda to the earnest money agreements, which detailed, among other things, all closing costs. No portion of these addenda refers to payment of real property taxes. The agreements were signed by plaintiff and Summit Exchange Company, as agent for the Peterkorts.

Three months later, at closing, plaintiff asserted that the tax provision of the executed earnest money agreements obligated defendants to pay the tax penalties that would become due under ORS 308.395(1) when the land was developed. Defendants disagreed and offered to cancel the agreements. Plaintiff reserved the right to litigate the issue and agreed to close.

Plaintiff brought this action seeking a declaration that the earnest money agreements obligated defendants to

pay the tax penalty. The trial court concluded that the earnest money agreements included no such obligation. It found that the tax provision was ambiguous, and that, based on the conduct of the parties and other evidence of the parties' intentions, they never agreed that defendants had assumed the obligation to pay the tax penalties.

Plaintiff argues that the trial court was incorrect in concluding that the agreements were ambiguous and that it was further mistaken in its evaluation of the parties' intentions. We first consider whether the trial court correctly concluded that the tax provision in the earnest money agreements is ambiguous. Whether language in a contract is ambiguous is a question of law. *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991); *CH2M Hill Northwest, Inc. v. Parktel I, Inc.*, 107 Or App 461, 465, 812 P2d 840 (1991). A contract provision is ambiguous

> "if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985). (Citations omitted.)

In determining whether a contract is ambiguous, the court may consider extrinsic evidence to explain the circumstances in which the contract was made. 72 Or App at 317.

The disputed language of the earnest money agreements requires defendants to pay taxes "which have been deferred." The question is whether "deferred taxes" unambiguously includes the tax penalty that becomes due under ORS 308.395(1) when farm land previously subject to the special assessment is developed.

Plaintiff argues that "deferred tax" does unambiguously refer to the special assessment tax penalty. It argues that the special assessment statutes plainly allow qualified property owners to postpone or delay payment of real property taxes at full market value. It also relies heavily on testimony that the special assessment is commonly known as a "farm deferral."

Defendants argue that "deferred tax" unambiguously does not refer to the special assessment tax penalty.

They argue that the special assessment law does not actually defer taxation at all. Instead, it permits a lower rate of taxation as long as the property qualifies, and when the property does not, it assesses a penalty that does not necessarily bear any relation to the total value of the taxes that have been avoided. Thus, defendants contend, it is unlike a host of other special tax statutes, each of which is plainly denominated a "tax deferral," and each of which postpones the payment of accumulated tax liabilities.[4]

Both interpretations are plausible. Neither is incontestable. We cannot say that either "is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc., supra*, 72 Or App at 317. The trial court, therefore, was correct in concluding that the disputed provision of the earnest money agreements is ambiguous.

■     We next consider the trial court's assessment of the intentions of the parties concerning the disputed provision. Because the determination of the parties' intentions concerning ambiguous contract language is a question of fact, we review the trial court's decision for support by any competent evidence. *LaPointe's, Inc. v. Beri, Inc.*, 73 Or App 773, 777, 699 P2d 1173 (1985).

■     The uncontradicted testimony was that, prior to execution of the earnest money agreements, the parties never discussed the possibility that defendants would be required to pay the tax penalty that would become due when the property was developed. Unlike the final, executed agreements, earlier drafts of the agreement did refer to special assessments for farm property, but the draft agreements left blank any assignment of responsibility for amounts that would become due upon development. There was no evidence that a contractual assignment of any responsibility for payment of the penalties was necessary to complete the transaction.[5] The

---

[4] *See, e.g.*, ORS 311.666 *et seq* (deferred collection of homestead property taxes); ORS 311.702 *et seq* (deferral of special assessments for local improvements); ORS 311.740 (disaster area tax deferral).

[5] Indeed, the special assessment statute apparently does not impose any penalties on a transfer of ownership, only on removal of qualifying property from exclusive farm use. ORS 308.395. If plaintiff holds all or some portion of the property in exclusive farm use, it presumably will continue to enjoy the benefits of the special assessment. In fact, there was testimony that plaintiff intended to hold portions of

subject of the special assessment was not raised until closing, three months after the execution of the earnest money agreements. It was likewise uncontradicted that, in naming their price for the farm, the Peterkorts insisted that the final figure be net, free and clear of any offsets, expenses or commissions. Plaintiff agreed. Consistent with that testimony, the addenda to the earnest money agreements, which detailed all closing costs, make no mention of defendants' responsibility for payment of the special assessment tax penalty. The trial court's conclusion that the parties did not intend the tax provision of the earnest money agreements to apply to tax penalties under ORS 308.395(1) is supported by competent evidence.

■    Plaintiff also assigns error to the trial court's award of attorney fees to the Peterkorts. Plaintiff contends that, because only Summit Exchange signed the earnest money agreements that provide for an award of attorney fees in the event of a contract dispute, only Summit Exchange may be awarded fees. The trial court concluded that Summit Exchange signed the earnest money agreements as agent for the Peterkorts, and that the Peterkorts, as principals, are entitled to enforce the attorney fee provisions of the earnest money agreements.

Plaintiff insists that Summit Exchange was not acting as the Peterkorts' agent. Whether Summit Exchange acted as the Peterkorts' agent, however, is a question of fact, which we review for any competent evidence. *Knez v. Reliable Realty*, 51 Or App 487, 493-94, 626 P2d 372, *rev den* 291 Or 309 (1981). There is testimony that the Peterkorts retained Summit Exchange as their agent to facilitate a real estate exchange for them. The trial court, therefore, did not err.

Affirmed.

the purchased property in farm use as the planned development occurred in stages over an unspecified period of time.