Argued and submitted December 12, 1996; resubmitted In Banc September 4, affirmed December 24, 1997

PRESTIGE HOMES REAL ESTATE CO.,
an Oregon corporation,
dba ERA Prestige Homes,
*Appellant,*

*v.*

Jack HANSON,
*Respondent.*

(94-CV-0104; CA A91664)

951 P2d 193

David V. Gilstrap argued the cause for appellant. With him on the briefs was Davis, Gilstrap, Harris, Hearn & Welty, P.C.

Walter L. Cauble argued the cause for respondent. With him on the brief was Schultz, Salisbury, Cauble, Versteeg & Dole.

DE MUNIZ, J.

Warren, J., concurring in part; dissenting in part.

**DE MUNIZ, J.**

Plaintiff, a real estate broker, brought this action for breach of contract or, in the alternative, for recovery based on *quantum meruit*. It appeals the trial court's grant of defendant's motion for summary judgment. We affirm.

Defendant owns real property in Grants Pass. On September 11, 1993, defendant listed the property for sale with plaintiff, giving plaintiff the exclusive right to list and sell the property from September 11, 1993, through September 11, 1994. On April 30, 1994, defendant withdrew plaintiff's authority. Plaintiff then brought this action alleging that, under the terms of the parties' agreement, it was entitled to $14,940.

The agreement is comprised of three preprinted forms: A "Residential Data Form," an "Addendum to Listing Agreement" and a "Data Input/Change Order." On the Residential Data Form, next to "Price" was written "$277500." The "Data Input/Change Order" form, signed in November, records the "Listing Price" as $277,500 and a price change from that amount to $249,000.[1] The documents provide, in part:

> "If, during said listing period, the property is sold or transferred by owner or by any other person, firm, corporation, or REALTOR; or if Broker or sub-agents produce(s) a purchaser ready and willing to purchase the property; or if within 120 days after the expiration of said listing period a sale is made to any person to whom the property has been shown by Broker or sub-agents, owner agrees to pay a fee of 6% of the sale price, unless otherwise specified in writing on this contract. The foregoing shall not apply in the event owner has listed the subject property with another Broker following the expiration date of this agreement. It is, however, understood that there shall be a reasonable time allowed after termination of this agreement to close any transaction on which earnest money has been deposited.
> * * *
>
> "* * * * *

---

[1] Plaintiff's damage claim is for six percent of $249,000.

"Broker is authorized to sell at the price and terms specified herein (or with owner(s) consent for a lesser sum or on other terms)[.]

"\* \* \* \* \*

"The term sale shall be deemed to include any transfer of title, exchange, trade, lease or lease/option to which owner consents. In the event of an exchange or trade, Broker is permitted to represent and receive compensation from both parties.

"\* \* \* \* \*

"The SOLE and EXCLUSIVE RIGHT to sell, exchange, rent or lease the herein described property is hereby granted to the undersigned Real Estate Broker. A full fee as stated above shall be paid to the Broker in the event of a sale by the owner(s) or persons acting on behalf of the owner(s) during the term of this contract. *In case owner(s) withdraw(s) the authority hereby given prior to said expiration date, Owner(s) agree(s) to pay Broker the said fee just the same as if a sale had actually been consummated by Broker.*" (Emphasis supplied.)

The trial court held:

"Here the listing agreement sets forth the circumstances under which Plaintiff can earn a commission. All involve a sale of the property in question by the broker or others or the production of a bonafide buyer, neither of which occurred in this case."

■■ On a motion for summary judgment, we review the record in the light most favorable to the nonmoving party, plaintiff here. *Jones v. General Motors Corp.,* 325 Or 404, 939 P2d 608 (1997). The parties agree that the contract is unambiguous. The interpretation of the terms of an unambiguous contract is a question of law for the court. *Timberline Equip. v. St. Paul Fire & Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). As there are no issues of fact to be resolved, the only question is whether defendant is entitled to judgment as a matter of law. ORCP 47.

Plaintiff acknowledges that the court was correct that plaintiff would be entitled to payment of a commission in the event of an actual sale or if it provided a willing buyer and defendant refused to sell. It argues, however, that the court

erred in failing to recognize a third situation in which a commission would be owed. Plaintiff argues that the italicized language above specifically calls for payment of a commission "the same as if a sale had actually been consummated" if the owner withdraws the broker's authority before expiration of the listing agreement. That commission, plaintiff contends, applies to the situation here and obligates defendant to pay six percent of $249,000 because the contract makes no distinction between the listing price and the sale price.

■ Defendant argues that plaintiff focuses on language out of context. Defendant argues that, in context, the language on which plaintiff relies means (1) that if someone other than the broker sells the property during the listing period, the broker gets a fee as if the broker had produced the buyer, and (2) the fee is owed even if the owner withdraws the broker's authority. Defendant argues that there is nothing in the contract that obligates him to pay, as plaintiff claims, a fee of six percent of the listing price for withdrawing the broker's authority if no sale has occurred.

We agree with defendant. In the first instance, we reject plaintiff's position that there is no distinction between the listing price and the sale price under the agreement. The "Data Input/Change Order" clearly refers to the $249,000 as the "listing price," and the agreement provides that the broker may sell the property at that listed price or for a lesser sum with the owner's consent. Accordingly, the listing price becomes the sale price only if the sale is for that amount. Furthermore, the listing price does not determine the commission. The first paragraph, set out above, establishes that a commission is calculated on the sale price: "If during said listing period, the property is sold or transferred" the "owner agrees to pay a fee of 6% of the *sale* price." (Emphasis supplied.) The paragraph dealing with the broker's rights uses that calculation to determine the commission when the broker does not make the sale.

The first sentence of the broker paragraph gives the broker "[t]he SOLE and EXCLUSIVE RIGHT" to sell the property. However, the remaining two sentences recognize that a sale by someone other than the broker might occur. In that event, the agreement provides that a "full fee as stated

above" will be paid and, even if the owner has withdrawn the broker's authority, the broker will receive "said fee" as if a sale "had been consummated by Broker." In other words, the fee is to be calculated as in paragraph one—six percent of the *sale* price.

Under plaintiff's interpretation, the owner would immediately be liable for six percent of the listing price as a penalty for withdrawing the broker's authority irrespective of the reasons for withdrawal—death of a family member, illness of the owner or a change of mind. However, the context of the language relied on by plaintiff does not support that reading. Instead, the requirement that the commission be calculated according to the sale price shows that the provision was intended to apply in the situation when a buyer is found but the owner withdraws the listing so as to save the commission.[2] The trial court did not err in holding that a commission involves a sale of the property.

■　　Plaintiff also argues that the trial court erred in dismissing its *quantum meruit* claim. The court held that the listing agreement was

> "the complete agreement of the parties. It is an enforceable, unambiguous express contract. Therefore, Plaintiff's Quantum Meruit claim that is inconsistent with the express contract cannot lie."

■　　We explained in *Kashmir v. Patterson*, 43 Or App 45, 47-48, 602 P2d 294 (1979), *aff'd* 289 Or 589, 616 P2d 468 (1980):

> "*Quantum meruit* is a form of restitution where the plaintiff has performed services for defendant and seeks to recover their fair value. The law, in appropriate situations, will imply a quasi-contract. It is not consensual. It is not a contract. It is a remedial device which the law affords to accomplish justice and prevent unjust enrichment. *Quantum meruit* presupposes that no enforceable contract exists." (Citation omitted.)

---

[2] The agreement also covers the situation when the broker presents a buyer immediately before the agreement terminates. Under those circumstances, the parties "under[stand] that there shall be a reasonable time allowed after termination * * * to close any transaction on which earnest money has been deposited."

Pleading both a contract and *quantum meruit* may be beneficial to a plaintiff where facts may show that it did not substantially perform the contract but that it is entitled to the reasonable value of the services furnished. 43 Or App at 48. However, ultimately there cannot be a valid legally enforceable contract and an implied contract covering the same services. *Porter Const. Co. v. Berry et al.*, 136 Or 80, 85, 298 P 179 (1931); *Kashmir*, 43 Or App at 48.

Here, the listing agreement is a valid contract. It specifically covers defendant's obligation to plaintiff in the event defendant withdraws plaintiff's authority before the agreement expires. That obligation arises in the event of a sale, which did not occur here. The trial court did not err in dismissing plaintiff's *quantum meruit* claim.

Affirmed.

**WARREN, J.,** concurring in part, dissenting in part.

While I agree that the trial court properly dismissed plaintiff's quantum meruit claim, because the majority opinion mischaracterizes the contract issue in this case and comes to the wrong result, I dissent.

The majority frames the issue assuming the following: the parties agree that the contract is unambiguous; interpretation of an unambiguous contract is a question of law; and there are no issues of fact to be resolved. Thus, the majority contends that the only question is whether defendant is entitled to judgment as a matter of law. This analysis is flawed from the start.

Although both parties do say that the contract is unambiguous, they are wrong. While each party asserts that the contract is unambiguous to the extent that it must be interpreted in its favor, each party's interpretation is very different. We are certainly not precluded from finding an ambiguity because each party has confidence in its own argument. Only if defendant's interpretation is so clear as to preclude doubt by any reasonable person would summary judgment be appropriate. *See Pacific Western Devel. Corp. v. Summitt Exchange Co.*, 118 Or App 693, 698, 848 P2d 1246 (1993). Because this contract is susceptible to more than one

reasonable interpretation, I cannot concur in the majority opinion.

The agreement provided, in part:

"If, during said listing period, the property is sold or transferred by owner or by any other person, firm, corporation, or REALTOR; or if Broker or sub-agents produce(s) a purchaser ready and willing to purchase the property; or if within 120 days after the expiration of said listing period a sale is made to any person to whom the property has been shown by Broker or sub-agents, owner agrees to pay a fee of six % of the sale price, unless otherwise specified in writing on this contract."

The addendum to the listing agreement provided, in part:

"The SOLE and EXCLUSIVE RIGHT to sell, exchange, rent or lease the herein described property is hereby granted to the undersigned Real Estate Broker. A full fee as stated above shall be paid to the Broker in the event of a sale by the owner(s) or person acting on behalf of the owner(s) during the term of this contract. In case owner(s) withdraw(s) the authority hereby given prior to said expiration date, owner(s) agree(s) to pay Broker the said fee just the same as if a sale had actually been consummated by Broker."

The specific language relied upon by Prestige here and below is found in the addendum to the listing agreement: "In case owner(s) withdraw(s) the authority hereby given prior to said expiration date, owner(s) agree(s) to pay Broker the said fee just the same as if a sale had actually been consummated by Broker." Prestige contends that the trial court erred in construing the agreement because it "gave no effect whatever" to this clause and thus ran afoul of ORS 42.230 by omitting a "bargained for" term. Further, Prestige asserts that the disputed provision permits only one reasonable construction: that the reference to "said fee" means six percent of the "list" price, which is the price for which Hanson agreed to sell the property.

The majority opinion holds that the "list" price is completely different than the "sale" price. However, it fails to

reconcile the fact that under one other condition in the contract the list price becomes the sale price. The contract provides that if the broker provides a ready and willing buyer and the owner refuses to sell, the broker is still entitled to six percent of the sale price, even though no sale has occurred. The six percent must necessarily refer to the list price. Thus, the majority is in error when it holds "[t]he trial court did not err in holding that a commission involves a sale of the property." 151 Or App at 761. Interpreting this contract to provide for a commission, based on the list price, if owner withdraws the authority to sell the property is both sensible and reasonable.

I am not, however, insinuating that the majority opinion's interpretation of the contract is wrong. The point is, the disputed language is capable of more than one reasonable construction. It could mean that the realtor is entitled to a commission because the seller revoked its authority to list and sell the property before the expiration of the agreement. It could also mean that the realtor is entitled to a commission only if the seller sold the property after revoking the realtor's authority before the expiration of the agreement. Both constructions are consistent with the language of the agreement and neither is so unreasonable that we may reject it as a matter of law. Accordingly, an ambiguity exists. The resolution of the ambiguity presents a question of fact and the majority opinion errs in affirming the trial court's grant of summary judgment.

Riggs, Landau and Armstrong, JJ., join in this dissent.