Argued and submitted May 15, affirmed July 17, 1985

# LIFE FINANCIAL INCORPORATED X,
*Appellant,*

*v.*

# AMERICAN GUARANTY FINANCIAL CORPORATION et al,
*Respondents.*

## (A8406-03797; CA A33151)

704 P2d 122

Jeffrey N. Batchelor, Portland, argued the cause for appellant. With him on the briefs were John P. Bledsoe and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Jack L. Kennedy, Portland, argued the cause for respondent American Guaranty Financial Corporation. With him on the brief were Susan E. Watts, Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak and Kennedy, King & Zimmer, Portland.

Eugene E. Feltz, Portland, waived appearance for respondent Pacific Western Bank.

Before Gillette, Presiding Judge, and Van Hoomissen and Newman, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Life Financial Incorporated X (Life X) filed this action seeking a declaration that defendant American Guaranty Financial Corporation (AGFC) had not complied with the conditions of an agreement by which Life X was to purchase AGFC's minority holding in American Guaranty Life Insurance Company (AGLIC). Life X also asked the court to enjoin defendant Pacific Western Bank, the escrow agent for the transaction, from disbursing any funds until AGFC had complied with the conditions. The trial court granted summary judgment for defendants and denied plaintiff's motion to file an amended complaint asserting an additional claim. Plaintiff appeals, assigning those actions as error. We affirm.

AGFC was originally the sole stockholder of AGLIC. It sold a controlling interest in the company to Life X in August, 1983. The sale agreement contained various option provisions; AGFC's attempt to exercise one of those options led to lawsuits between it and Life X two months later. Partly to settle those cases, AGFC and Life X agreed, on November 16, 1983, that Life X would purchase AGFC's remaining shares in AGLIC for $6,800,000, payable partly in cash and partly by Life X assuming some of AGFC's obligations. The sale was to close in escrow, with Pacific Western as the escrow agent.

Paragraph 1.4 of the agreement provided:

"The obligation of AGFC to sell the Shares to Life X and the obligation of Life X to purchase the Shares from AGFC shall be subject to the following conditions and no other:

"(a)  The shareholders of AGFC shall have duly approved the sale of the Shares; and

"(b)  The shareholders of AGFC shall have adopted a plan of complete liquidation in accordance with Section 337 of the Internal Revenue Code. *This condition is solely for the benefit of AGFC and may be waived by it."* (Emphasis supplied.)

Paragraph 1.5 instructed the escrow agent to deliver the money, stock certificates and other documents placed in escrow to those entitled to them under the contract "[u]pon receiving a certificate of the corporate secretary of AGFC

attesting to the approval described in Section 1.4(a)," together with the opinion of a designated law firm[1] "that the shareholders of AGFC have duly approved the sale of the Shares, and to the approval or waiver of the condition described in paragraph 1.4(b) * * *."

AGFC submitted the agreement to a special meeting of its shareholders, but it did not submit a plan of complete liquidation. The shareholders approved the agreement, and the board waived the complete liquidation condition. On July 5, 1984, the law firm gave its opinion that AGFC had complied with the conditions stated in paragraph 1.4, and AGFC's corporate secretary provided a certificate of shareholder approval of the sale. On June 27, 1984, before those approvals were given, Life X filed this action, alleging that AGFC's failure to seek shareholder approval of a plan of complete liquidation before waiving that condition violated the agreement. It sought a declaratory judgment that AGFC had not complied with the terms of the agreement and was not entitled to distribution from the escrow. AGFC, without answering, moved for summary judgment on June 29, 1984.

■ Life X argues that the agreement, read in conjunction with an affidavit of Richard Fanslow, chairman of its Board of Directors, establishes either that the submission of a liquidation plan was a condition precedent to the effectiveness of the agreement or that the agreement was ambiguous on the point and that summary judgment was therefore inappropriate. Because the agreement was an integration, the affidavit was admissible only to explain the circumstances surrounding the making of the agreement as an aid in construing it. It was not admissible to vary or contradict its terms. ORS 41.740; ORS 42.220.

■■ Paragraph 1.4(b) provides that the complete liquidation condition "is solely for the benefit of AGFC and may be waived by it." Fanslow's affidavit shows that his understanding of the provision was different from its plain language. He suggests no reason that the complete liquidation provision would benefit Life X or, indeed, would be of the least concern

---

[1] The parties agreed some time after the execution of the contract to change the law firm whose approval was required from the one named in the contract to a different firm.

to it. His testimony cannot create an ambiguity, and it does not aid in interpreting the provision. By its own terms, the condition benefits only AGFC; Life X has no interest in the condition or in whether or how AGFC may decide to waive it. All that Life X can legitimately ask is that AGFC either adopt a plan of complete liquidation or formally determine that it wishes to complete the sale without first adopting such a plan. There are no material issues of fact on this subject, and the court did not err in granting summary judgment to AGFC.[2]

During discovery depositions in mid-July, 1984, and before the court ruled on AGFC's motion for summary judgment, Life X discovered what it believed were irregularities in the call of the meeting at which the shareholders approved the sale. It therefore moved to amend the complaint to include a claim that the "shareholders of AGFC have not duly approved the sale of the Remaining Shares to Life X" and that AGFC was thus not entitled to receive disbursement from the escrow. The trial court denied the motion at the same time that it granted AGFC's motion for summary judgment.

■ ■ Life X asserts that it was entitled to amend its complaint as of right as to AGFC, because AGFC had not yet answered;[3] if it was not entitled to do so, Life X argues that the court abused its discretion in denying the motion to amend. We need not decide these issues, because any error was harmless. Under paragraph 1.5 of the agreement, the escrow agent was to deliver the money and documents deposited with it upon receipt of a certificate from the corporate secretary of AGFC and a legal opinion from a designated law firm; the certificate and opinion together would show compliance with the conditions of paragraph 1.4. The certificate and opinion were provided on July 5, 1984, and Life X does not question their facial validity. The duty of the escrow agent thereby

[2] Paragraph 1.6 of the agreement requires AGFC to call a shareholder's meeting in order to obtain "the approvals referred to in Section 1.4" and requires AGFC to "use its best efforts to obtain such approvals." Because the complete liquidation provision was solely for AGFC's benefit, it did not breach this requirement by waiving the condition entirely, thus obviating the need for shareholder approval. AGFC's obligation was to remove this impediment to the completion of the sale by using its best efforts to get shareholder approval; Life X cannot complain that AGFC removed the impediment by the easier and more direct method of a waiver by its board.

[3] Pacific Western Bank answered on July 16, 1984, before the filing of plaintiff's motion.

became absolute. It had no further obligation to determine if the documents were correct; indeed, it had no right to do so. Any irregularity in the procurement of the approval or inaccuracy in the opinion could have no effect on the closing of the escrow and the completion of the sale. Life X's allegations in the proposed amended complaint could not support the relief it sought in this case.

Affirmed.