Argued and submitted September 17, 1990, affirmed June 5, 1991

## CH2M HILL NORTHWEST, INC.,
and CH2M Hill Industrial Design Corporation,
*Appellants,*

*v.*

## PARKTEL I, INC.,
and Oregon Pacific Development Company,
dba Parkside Center Company,
*Respondents.*

(A8806-03569; CA A61753)

812 P2d 840

Jacob Tanzer, Portland, argued the cause for appellants. With him on the brief were Barbara A. Skotte and Ball, Janik & Novack, Portland.

Mark C. Rutzick, Portland, argued the cause for respondents. With him on the brief were Cynthia L. Hull and Preston, Thorgrimson, Ellis & Holman, Portland.

Before Buttler, Presiding Judge, and Newman and Deits, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

This appeal arises from an action by two tenants, CH2M Hill Northwest, Inc. (CH2M Hill) and CH2M Hill Industrial Design Corporation (IDC) (collectively referred to as plaintiff), against their landlord, Parktel I, Inc., and Oregon Pacific Investment Development Corporation, doing business as Parkside Center Company (collectively referred to as defendant). Plaintiff sought a declaratory judgment, damages for overpayment of rent and for breach of the implied covenant of good faith and fair dealing. All claims concern the proper rent for the second five-year term of the 10-year lease between the parties. The trial court granted defendant's motion for summary judgment, and plaintiff appeals. We affirm.

On May 14, 1982, plaintiff entered into a 10-year lease with defendant, effective October 1, 1982, for approximately 50,000 square feet of office space on two floors in Parkside Center.[1] The base rent was to remain the same for the first five years, October 1, 1982, through September 30, 1987. At the beginning of the sixth lease year, the base rent was to be fixed for the balance of the lease term. The lease provided that the base rent for the first five years was $16.50 per square foot per year. In addition to the base rent, the lease provided that if, in any calendar year, operating and maintenance costs were greater than such costs for the calendar year immediately preceding the calendar year in which a new base rent commenced,[2] the rent payable by plaintiff for the succeeding calendar year was to be increased by its proportionate share of such increased costs. Because of the increase in those costs during the 1986 calendar year over those costs during the 1982 calendar year, plaintiff paid the additional amount of $1.14, making the total rent $17.64 per square foot in 1987. There is no dispute about that.

---

[1] Actually, there are two leases: CH2M Hill entered into a lease on May 14, 1982, for 50,000 square feet of office space located on floors two and three of Parkside Center. On January 16, 1985, IDC entered into a similar lease with defendant for 17,000 square feet of the CH2M Hill's 50,000 square foot. CH2M Hill and defendant then executed an addendum, reducing CH2M Hill's space by 17,000 square feet. For convenience, the two leases are referred to as one; the relevant provisions are identical.

[2] "[T]he year in which a new base rent commences" includes both year one and year six.

The principal dispute is over the amount of base rent plaintiff must pay for the last five years, that is, for the period October 1, 1987, through September 30, 1992. The lease provides that the base rent for that period

> "shall be the lesser of the then scheduled annual rent for the Building or $23.50 per square foot of rentable area per year."

At its quarterly meeting in August, 1987, defendant established the scheduled rent for the building effective in October of that year. That schedule[3] set the rent for plaintiff's space at $17.65 per square foot, one cent more than the total rent that plaintiff had been paying during the fifth year of the lease ($16.50 per square foot, plus $1.14 for plaintiff's share of the increase in the cost of maintenance). Defendant contends that the schedule fixed plaintiff's base rent for the second five years.

Plaintiff contends that it was error to grant defendant's motion for summary judgment, because the term "scheduled annual rent" is ambiguous, giving rise to a question of fact as to the parties' intent and that their intention was to relate the rent to the market. It also argues that there are genuine issues of material fact as to whether defendant breached the implied covenant of good faith and fair dealing and whether defendant misapplied the operating expense escalator provision.[4]

---

[3]

| | Scheduled Rents October, 1987 | |
| Floor | Rent | Available Space |
| --- | --- | --- |
| 1 | $18.00 | 5,875 |
| 2 ** | $17.65 | -0- |
| 3 ** | $17.65 | 13,800 |
| 4 | $16.50 | -0- |
| 5 | $16.50 | 3,060 |
| 6 | $16.50 | 2,560 |
| 7 | $17.50 | -0- |
| 8 | $17.50 | -0- |
| 9 | $18.50 | 3,710 |
| 10 | $19.50 | 6,900 |

** The floors on which plaintiff rents space.

[4] Plaintiff also assigned error to the trial court's award of attorney fees and costs to defendant. That assignment was stricken, because it raises an issue that was not included in plaintiff's notice of appeal.

■   Plaintiff argues, first, that negotiations leading up to the signing of the lease indicate that the phrase "scheduled annual rent" is ambiguous. The complete phrase, however, is "scheduled annual rent for the building." Because we conclude, as did the trial court, that the complete phrase is not ambiguous, parol evidence that might tend to create an ambiguity is not admissible. ORS 41.740; *Life Fin. Incorp. X v. Amer. Guaranty Fin. Corp.,* 74 Or App 497, 500-01, 704 P2d 122 (1985). The construction of a contract, including a determination of whether it is ambiguous, is a question of law for the court. *Timberline Equip. v. St. Paul Fire & Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). A provision is ambiguous if it has no definite meaning or if it is capable of more than one reasonable interpretation; it is unambiguous if its meaning is sufficiently clear that it precludes doubt by a reasonable person. *Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985); *Guinn v. Avia Group International,* 94 Or App 560, 563, 766 P2d 421 (1988), *rev den* 307 Or 514 (1989).

Defendant met regularly, usually quarterly, to determine the scheduled rent for the building.[5] As used in the lease, "scheduled annual rent for the building" could have only one sensible and reasonable meaning, *i.e.,* the amount shown on defendant's rent schedule for the building, not to exceed $23.50 per square foot. It is, therefore, unambiguous, precluding evidence of the negotiations. *See Hayden Corporation v. Gayton,* 98 Or App 703, 780 P2d 787 (1989). There is no issue of fact on the meaning of the challenged phrase.

■   In every contract, there is an implied covenant of good faith and fair dealing. What constitutes good faith depends on the reasonable expectations of the parties. *Best v. U.S. National Bank,* 303 Or 557, 563, 739 P2d 554 (1987); *City of Portland v. George D. Ward & Assoc.,* 89 Or App 452, 750 P2d 171, *rev den* 305 Or 672 (1988). Plaintiff argues that defendant breached that covenant by fixing an excessively high base rent for the last five years of the lease.

---

[5] In its brief, plaintiff states, without citation to the record (*see* ORAP 7.17(8)), that the schedule establishing the rent for the second five-year period was "apparently created during the litigation for the purposes of the litigation." There is no basis in the record for that assertion. However, plaintiff does not contend that defendant did not meet regularly to establish the scheduled rent for the building. Rather, its argument is that the scheduled rent must be related to market rent.

Although the lease permits defendant to schedule rent in any amount up to $23.50 per square foot, defendant had to act in good faith in setting the rent. The record shows that plaintiff, during negotiations, thought that the base rent for the second five years would be substantially higher than it was for the first five-year period. It believed that the best that it could hope for was $21.00 per square foot and projected that the rate for the building for that period would be at least $22.50 per square foot. For that reason, it bargained for a base rent cap of $23.50 per square foot and got it. Defendant set the base rent for the second five years at almost the same total amount that plaintiff had been paying during the fifth year of the lease ($17.64). Even though the scheduled rent for space on some of the higher floors was not increased in the October, 1987, schedule and, in fact, was lower than that for plaintiff's space, that is not evidence of a breach of the implied covenant of good faith. The evidence is that plaintiff's expectation, when negotiating the lease, was that the base rent for the second five years would be higher than $17.65 per square foot. On this record, there is no evidence on which a jury could find that defendant acted in bad faith in setting the base rent for the last five years of the lease.

■ Finally, plaintiff argues that the operating cost escalator clause was misapplied. That clause provides:

"If, in any calendar year during the term of this Lease, Lessor's annual operating and maintenance costs (as defined below) shall be greater than such cost for the calendar year [immediately preceding the calendar year in which a new base rent commences], the rent payable by Lessee for the succeeding calendar year shall be increased by an amount equal to Lessee's proportionate share of such increased operating and maintenance costs."

It is undisputed that plaintiff's share of increased operating and maintenance costs for the fourth calendar year (1986) was $1.14 per square foot. Plaintiff's argument seems to be that the increased costs during the *fifth* calendar year could not properly be added to the base rent in the sixth calendar year. It claims that during the year in which the new base rent commenced, 1987, the escalator clause did not apply, because the operating expenses had already been incorporated into the new base rent. That is wrong, because during the fifth calendar year, the maintenance costs increased over those

incurred during the calendar year immediately preceding the commencement of the lease, and that increase is added to the base rent during the sixth calendar year, even though it is a newly established base rent. Plaintiff fails to recognize that the escalation clause is independent of the provision fixing the base rent for the last five years.

Defendant properly applied the escalator clause as follows: Plaintiff's share of the increased operating costs for the fourth calendar year, which plaintiff concedes was $1.14, was added to the original base rent of $16.50 to arrive at the rent payable for the fifth calendar year ($17.64). There is no dispute over that. In August, 1987, defendant determined the scheduled rent for the building beginning October, 1987; the scheduled rent for plaintiff's space was fixed at $17.65. That amount became the base rent for the second five years of the lease, and its calculation was independent of the escalator clause. Because plaintiff was obligated to pay its share of any increase in operating costs applicable to the fifth calendar year, defendant properly added that amount to the new base rent of $17.65 to arrive at $18.10, the total rent payable for the sixth calendar year, January 1, 1988, through December 31, 1988.

Affirmed.