Submitted on record and briefs April 23, 1992, reversed and remanded March 3,
reconsideration denied May 12, petition for review pending 1993

Stephanie PIERCE,
*Appellant,*

*v.*

MT. HOOD MEADOWS OREGON, LTD.,
and Mt. Hood Meadows Development Corp.,
*Respondents.*

(9101-00311; CA A70313)

847 P2d 909

Stephanie G. Pierce, Portland, filed the brief *pro se*.

Brad C. Stanford, F. Scott Farleigh and Farleigh, Wada & Witt, P.C., Portland, filed the brief for respondents.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Plaintiff appeals from a summary judgment for defendants. ORCP 47B. We review the facts in the light most favorable to plaintiff, *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978), and reverse and remand.

Defendants operate a skiing facility on Mt. Hood. Plaintiff purchased defendants' ski-school package, which included equipment rental, a lift ticket and instruction. The equipment rental agreement stated, in part:

> "I accept and clearly understand that there are inherent and other risks involved in the sport of skiing, for which this equipment is to be used; that injuries are a common and ordinary occurrence of this sport, and I freely assume those risks. I understand that the ski-boot binding system which I have rented will not release at all times nor under all circumstances, nor is it possible to predict every situation in which it will release, and it is therefore no guarantee of my safety. I therefore release Mt. Hood Meadows and its owners, agents and employees from any and all liability for damage and injury to myself or to any person or property resulting from negligence, the selection, adjustment, and use of this equipment, accepting myself the full responsibility for any and all such damage or injury of any kind which may result."

The lift ticket stated:

> "The purchaser of this ticket understands that skiing can be hazardous and accepts and assumes the inherent risks of skiing, including but not limited to: changing weather conditions, variations or steepness in terrain, snow or ice conditions, surface or subsurface conditions, bare spots, creeks and gullies, forest growth, rocks, stumps, lift towers and other structures and their components, collisions with other skiers, and the skier's failure to ski within the skier's own ability. Always ski in control.
>
> "IN CONSIDERATION FOR EACH AND EVERY RIDE ON ANY SKI LIFT DEVICE, THE USER OF THIS TICKET HEREBY RELEASES MT. HOOD MEADOWS AND ITS AGENTS FROM ANY AND ALL CLAIMS ARISING OUT OF OR IN CONNECTION WITH THE USE OF THIS TICKET INCLUDING BUT NOT LIMITED TO SKIING ACTIVITIES."

ORS 30.975 provides:

> "In accordance with ORS 18.470 and notwithstanding ORS 18.475(2), an individual who engages in the sport of skiing, alpine or nordic, accepts and assumes the inherent risks of skiing in so far as they are reasonably obvious, expected or necessary."

ORS 30.970(1) provides:

> " 'Inherent risks of skiing' includes, but is not limited to, those dangers or conditions which are an integral part of the sport, such as changing weather conditions, variations or steepness in terrain, snow or ice conditions, surface or sub-surface conditions, bare spots, creeks and gullies, forest growth, rocks, stumps, lift towers and other structures and their components, collisions with other skiers and a skier's failure to ski within the skier's own ability."

Plaintiff had never skied before, but a friend gave her two hours of instruction before her formal lesson began. Plaintiff felt that she had learned the skills taught in the A-level class, so she joined the more advanced B-level lesson. She told the B-level instructor that she had never skied before. She rode the lift up the hill, but the slope looked too steep for her, so she rejoined the A-level class. The A-level instructor later sent plaintiff and another student back up the slope on the lift. There she saw the B-level instructor and told him what she had learned. She asked him the time, discovered that she had to meet a friend in ten minutes and decided to ski down the hill. The B-level instructor was partially down the slope before plaintiff began her run. She said that she had not rejoined the B group at this time but was continuing the A-level lesson. She skied down the hill, lost control in a turn, fell and was injured.

Plaintiff claimed that defendants negligently supervised and instructed her. The trial court ruled:

> "1.  That the rental agreement signed by Plaintiff and the language of the release printed on Plaintiff's lift ticket constituted an agreement of release enforceable under Oregon law; [and]

> "2.  ORS 30.975 prevents Plaintiff from recovering against Defendants since the inherent risks of skiing were the sole cause of her injury."

■      Plaintiff assigns error to the trial court's conclusion that the rental agreement and the lift ticket release defendants from claims for negligent supervision and instruction in defendants' operation of the ski school. The documents do not expressly mention defendants' liability for injuries incurred in the operation of the ski school. They relate to claims arising from the use of the ski equipment and the lift. Plaintiff assumed the inherent risks of skiing. We cannot discern from the documents whether they were intended to apply to claims arising from negligent instruction and supervision during ski school lessons. They are "capable of more than one sensible and reasonable interpretation." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985). The ambiguity presents a fact question requiring evidence relating to the parties' intent and cannot be settled on a motion for summary judgment. *Mann v. Wetter*, 100 Or App 184, 188, 785 P2d 1064, *rev den* 309 Or 645 (1990); *Guinn v. Avia Group International*, 94 Or App 560, 563, 766 P2d 421 (1988), *rev den* 307 Or 514 (1989).

■■      Plaintiff also argues that the court erred when it held that ORS 30.975 shielded defendants from liability for negligence arising out of their ski school operation. She contends that, on this record, defendant's negligence is a question of fact. ORS 30.975 insulates defendants from liability resulting from the inherent risks of skiing. The statute bars plaintiff's claim only if her injury is due solely to the inherent risks of skiing. We considered the legislative history of ORS 30.975 in *Jessup v. Mt. Bachelor, Inc.*, 101 Or App 670, 673, 792 P2d 1232, *rev den* 310 Or 475 (1990), and said:

> "[T]he legislature intended to bar recovery for an injury caused solely by an inherent risk of skiing. But, if the injury is caused by a combination of an inherent risk of skiing and operator negligence, then the doctrine of comparative fault would apply."

*Nolan v. Mt. Bachelor, Inc.*, 115 Or App 27, 836 P2d 770 (1992), involved a claim of negligence by a student who was injured during a skiing lesson with an instructor employed by the ski area operator. We held that the statute does not shield ski area operators from liability for collisions caused by an employee's negligence:

"[W]hen both an inherent risk and a ski operator's negligence assertedly contribute to an injury, the questions of liability and apportionment of fault are for the trier of fact." 115 Or App at 30.

■　As in *Nolan*, plaintiff here claims that her injury was caused by defendant's negligence, specifically, in failing to properly supervise her skiing and in failing to explain to her how to slow down or check her speed. Defendants argue that she voluntarily left her lesson before she fell and that the injury was due solely to an inherent risk of skiing. There is evidence in the record to support the parties' conflicting versions of the facts. There remain unresolved material factual questions regarding whether defendants were negligent, whether any negligence by defendants contributed to the injury, and whether plaintiff was injured solely due to an inherent risk of skiing. The court erred in granting summary judgment.

Reversed and remanded.