Argued and submitted September 10, 1992, reversed and remanded May 12, 1993

BIOMASS ONE, L.P.,
a Delaware limited partnership,
Biomass-One Operating Company,
an Oregon corporation,
Lee S. Weisell, D. Sam Scheele
and Marc D. Rappaport,
*Plaintiffs,*

*v.*

S-P CONSTRUCTION,
a joint venture between
Pacific Architects & Engineers, Incorporated,
and Sheldon L. Pollack Corporation;
Pacific Architects and Engineers Incorporated,
a California corporation;
Sheldon L. Pollack Corporation,
a California corporation;
Norbert W. Pieper, A.I.A., Inc.,
a California corporation;
Pacific Architects and Engineers Incorporated,
a California corporation, a joint venture;
Pieper A.I.A., Inc., a California corporation;
Pacific Architects and Engineers International,
a California corporation;
Edward A. Shay, an individual;
Sheldon L. Pollack, an individual;
E. R. McCollum, an individual;
Norbert W. Pieper, an individual,
and Aetna Ins. Co.,
*Defendants,*

UNDERWRITERS OF INTEREST,
consisting of
Walbrook Insurance Company Limited,
Dart & Kraft Insurance Company Limited,
El Paso Insurance Company Limited,
Louisville Insurance Company Limited,
Ludgate Insurance Company Limited,
Mutual Reinsurance Company Limited,
Compagnie Europeene D'Assurances Industrielles S.A.,
Lexington Insurance Company,
St. Katherine Insurance Company PLC,

Assicurazioni Generali S.P.A.,
Andrew Beazley Syndicate #623,
Charles Henry Allenskey, Representative for
R. A. Edwards Syndicate at Lloyd's #219 and
R. A. Edwards Syndicate at Lloyd's #219,
(reference: Oregon)
*Appellants,*
*and*

S-P CONSTRUCTION,
a joint venture between
Pacific Architects & Engineers, Incorporated,
and Sheldon L. Pollack Corporation;
and Aetna Ins. Co.,
*Third-Party Plaintiffs,*

*v.*

DETROIT STOKER CO.,
a subsidiary of
United Industrial Corporation,
*Respondent,*
*and*

DELTAK CORPORATION,
S. M. Gilbert Co., Inc.,
Continental Insurance Company,
Corrosion Controllers, Inc.,
Fireman's Fund Insurance Company,
Mid-Continent Industrial Services, Inc.,
Employers Insurance Company of Wausau,
Andersen 2000, Inc., Hartford Insurance Group,
Beaumont Birch Company, American Ins. Co.,
Duncan Richardson Engineering Company, Inc.,
aka DCR Engineers, Inc.,
Bulk Handling Systems, Inc.,
Industrial Indemnity Company,
David Hartzell, individually
and dba International Trade Management & Associates,
Aqua-Con-Permutit, Protech Consulting Services, Inc.,
Clay Morrison Constructors, Inc.,
Ausland Construction, Inc.,
Beckman Industrial Corporation,
Northwest Controls, Inc.,
North American Pneumatics, Inc.,

BBC Brown Boveri, Inc.,
Insurance Co. of North America
and Rosemount, Inc.,
*Third-Party Defendants.*

(87-1724-J-2, 87-1766-J-2, 86-1146-J-2,
86-1567-J-2, 86-2621-J-2 & 87-1986-J-2; CA A68622)

852 P2d 847

John Folawn, Portland, argued the cause for appellants. With him on the briefs were Martin W. Jaqua and Holmes & Folawn, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. On the brief were M. Elizabeth Duncan, W. A. Jerry North and Schwabe, Williamson & Wyatt, Portland.

Before Rossman, Presiding Judge, and De Muniz and Landau,* Judges.

LANDAU, J.

---

* Landau, J., *vice* Buttler, J., retired.

### LANDAU, J.

Third-party plaintiffs Underwriters of Interest (Underwriters) appeal from a summary judgment in favor of third-party defendant Detroit Stoker. We reverse and remand.

S-P Construction (S-P) contracted to design and construct for Biomass One, L.P. (Biomass), a completed cogeneration power plant. S-P subcontracted with Detroit Stoker to provide "stokers," which are pieces of equipment in which wood waste fuel is burned to heat the boilers that produce electricity-generating steam.

Following completion of the plant, Biomass experienced difficulties with its operation. Among other things, Biomass had problems with the plant's combustion system, including the stokers. Biomass sued S-P for alleged defects in the design, engineering and construction of the plant. S-P, in turn, filed third-party complaints against various subcontractors, including Detroit Stoker. S-P's insurers settled the claims brought by Biomass. A group of those insurers, known collectively as Underwriters, elected to pursue the third-party claims against the subcontractors, and Underwriters were substituted for S-P as third-party plaintiffs.

The crux of the third-party complaint against Detroit Stoker is that it delivered equipment that failed to perform in accordance with its agreement with S-P. That agreement contained the following specifications:

"**Guarantees**

"The Company [Detroit Stoker] guarantees that the stokers covered in this proposal, when operated under the conditions herein provided, will produce the following results, it being understood and agreed that the Purchaser [S-P Construction] will provide the conditions hereinafter specified.

"**Fuel**

"The fuel to be burned shall be as described on page 13.

"* * * * *

"**Capacity**

"The Company guarantees that the stoker will be capable of burning sufficient fuel as described on page 13 to operate

the boiler at [175,000] lbs.[1] of steam per hour for a period of twenty-four hours."

Page 13 of the agreement describes the "fuel" as "Wood & Sander Dust (30%)" with a moisture content of 40 percent and "BTUs per lb. as fired" of 5,300. Underwriters alleged that the stokers did not have the capacity to generate 175,000 pounds of steam in a 24-hour period. Detroit Stoker answered that its guarantee was expressly conditioned on the use of fuel meeting the specifications of the agreement, and that any failure of the equipment to operate in accordance with the guarantee was a result of the use of fuel that did not comply with those specifications.

The trial court bifurcated the case, electing to proceed first with issues related to the guarantee. It limited the proceedings in the first phase to three issues:

"1. What were the specifications (physical and chemical) of the wood fuel supplied at the plant?

"2. What were the specifications of the wood fuel to be used for equipment design, as required by the contracts between the parties?

"3. If the wood fuel specified was not supplied, which (if any) breach of contract claims are barred as a matter of law?"

A dispute followed over which party bore the burden of proof on each of the three issues. Detroit Stoker argued that the use of the specified fuel was a condition precedent to enforcement of its guarantee and that, accordingly, Underwriters should bear the burden of proving its compliance with that condition. Underwriters argued that the parties did not intend the fuel specification to operate as a condition precedent, and they asked the court for an evidentiary hearing to prove the point.

The trial court denied Underwriters' request on the ground that the guarantee provision unambiguously required proof of use of wood fuel with a moisture content of 40 percent as a condition of its enforcement, and that Underwriters bore the burden of proving the use of fuel meeting those specifications. Underwriters then stipulated that it could not establish the characteristics of the fuel actually

---

[1] The contract originally specified a capacity of 150,000 pounds of steam generated in a 24-hour period. By subsequent change order, that figure was increased to 175,000.

burned at the cogeneration plant. Based on that stipulation, Detroit Stoker moved for summary judgment, which the court granted.

We review a summary judgment to determine whether there are any genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). Underwriters argue that the trial court erred in granting summary judgment, because its decision was based on the erroneous ruling that the guarantee provision of the contract is unambiguous.

Whether language in a contract is ambiguous is a question of law. If the language is ambiguous, then what the parties intended by that language presents a question of fact. *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991); *CH2M Hill Northwest, Inc. v. Parktel I, Inc.*, 107 Or App 461, 465, 812 P2d 840 (1991). Generally, a dispute concerning that factual question may not be resolved by summary judgment. *Pierce v. Mt. Hood Meadows Oregon, Ltd.*, 118 Or App 450, 454, 847 P2d 909 (1993); *Ziegler v. Bostwick*, 106 Or App 666, 668, 809 P2d 131, *rev den* 311 Or 644 (1991). Therefore, if the trial court was incorrect that the guarantee provision of the Detroit Stoker Agreement is unambiguous, its entry of summary judgment was error.

A contract is ambiguous

"if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985).

A contract is not ambiguous merely because the parties disagree about its interpretation. *Biomass One, L.P. v. S-P Construction (A61560)*, 103 Or App 521, 525, 799 P2d 152 (1990). There must be competing interpretations, each of which is reasonable. *P & C Construction Co. v. American Diversified*, 101 Or App 51, 56, 789 P2d 688 (1990).

Detroit Stoker contends that the guarantee provision of the contract operates only if the stokers were fired with fuel conforming to the contractual specifications. The contract states that "[t]he fuel to be burned shall be" wood and sander

dust with a moisture content of 40 percent. Thus, Detroit Stoker argues, a breach of the guarantee can be established only by proof that the specified fuel was used and that the stoker nevertheless did not produce 175,000 pounds of steam in a 24-hour period.

Underwriters contend that the disputed provision is a guarantee of capacity, not of continual performance, and that enforcement of the guarantee is not based on performance of any condition precedent. They emphasize that the guarantee states that "the stoker will be *capable* of burning sufficient fuel" with a 40 percent moisture content to operate the boiler at 175,000 pounds of steam in a 24-hour period. The reference to fuel with a particular moisture content, Underwriters argue, is merely one component of the contract's description of the capacity of the stoker. They contend that to interpret that language to require the continual use of any particular fuel would be unreasonable and inconsistent with the guarantee's reference to use of that fuel "for a period of twenty-four hours." Thus, they argue, they are not required to establish that any particular fuel ever was burned. Rather, they must prove that the stokers lacked the capacity to burn that fuel in sufficient quantity to generate the required amount of steam. Nothing in the contract, they conclude, precludes them from demonstrating the capacity of the stokers through expert testimony, as opposed to producing the results of actually using wood fuel with a moisture content of 40 percent.

The language of the guarantee is not so clear "as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc., supra,* 72 Or App at 317. Although the argument that the contract requires the use of particular fuel as a condition precedent to Detroit Stoker's performance may be a reasonable one, it is not compelled by the bare language of the agreement. The disputed language could as readily have been intended to operate as a description of stoker capacity. Nothing in the agreement explicitly prescribes the use of a particular fuel as a condition to Detroit Stoker's guarantee. Likewise, nothing in the agreement expressly prescribes how a failure of the stokers to operate as promised may be proven. The trial court, therefore, erred in concluding

that the guarantee provision is unambiguous, and summary judgment was not proper.

Because we hold that the trial court erred in granting summary judgment for Detroit Stoker, we need not address Underwriters' remaining assignments of error.

Reversed and remanded.