Argued and submitted March 19, reversed and remanded May 12, 1993

BIOMASS ONE, L.P.,
a Delaware limited partnership,
Biomass-One Operating Company,
an Oregon corporation,
Lee S. Weisell, D. Sam Scheele
and Marc D. Rappaport,
*Plaintiffs,*

*v.*

S-P CONSTRUCTION,
a joint venture between
Pacific Architects & Engineers, Incorporated
and Sheldon L. Pollack Corporation;
Pacific Architects and Engineers Incorporated,
a California corporation;
Sheldon L. Pollack Corporation,
a California corporation;
Norbert W. Pieper, A.I.A., Inc.;
a California corporation and
Pacific Architects and Engineers Incorporated,
a California corporation, a joint venture;
Pieper A.I.A., Inc., a California corporation;
Pacific Architects and Engineers International,
a California corporation;
Edward A. Shay, an individual;
Sheldon L. Pollack, an individual;
E.R. McCollum, an individual,
Norbert W. Pieper, an individual,
and Aetna Ins. Co.,
*Defendants,*

UNDERWRITERS OF INTEREST,
consisting of
Walbrook Insurance Company Limited,
Dart & Kraft Insurance Company Limited,
El Paso Insurance Company Limited,
Louisville Insurance Company Limited,
Ludgate Insurance Company Limited,
Mutual Reinsurance Company Limited,
Compagnie Europeene D'Assurances Industrielles S.A.,
Lexington Insurance Company,
St. Katherine Insurance Company PLC,

Assicurazioni Generali S.P.A.,
Andrew Beazley Syndicate #623,
Charles Henry Allenskey, Representative for
R.A. Edwards Syndicate at Lloyd's #219;
R.A. Edwards Syndicate at Lloyd's #219,
(reference: Oregon),
*Third-Party Plaintiffs - Appellants,*
*and*

S-P CONSTRUCTION,
a joint venture between
Pacific Architects and Engineers, Incorporated,
and Sheldon L. Pollack Corporation;
and Aetna Ins. Co.,
*Third-Party Plaintiffs,*
*v.*

DELTAK CORPORATION,
*Third-Party Defendant - Respondent,*
*and*

DETROIT STOKER CO.,
a subsidiary of
United Industrial Corporation,
S.M. Gilbert Co., Inc.,
Continental Insurance Company,
Corrosion Controllers, Inc.,
Fireman's Fund Insurance Company,
Mid-Continent Industrial Services, Inc.,
Employers Insurance Company of Wausau,
Andersen 2000, Inc., Hartford Insurance Group,
Beaumont Birch Company, American Ins. Co.,
Duncan Richardson Engineering Company, Inc.,
aka DCR Engineers, Inc.,
Bulk Handling Systems, Inc.,
Industrial Indemnity Company,
David Hartzell, individually and
dba International Trade Management and Associates,
Aqua-Con-Permutit, Protech Consulting Services, Inc.,
Clay Morrison Constructors, Inc.,
Ausland Construction, Inc.,
Beckman Industrial Corporation,
Northwest Controls, Inc.,
North American Pneumatics, Inc.,

BBC Brown Boveri, Inc.,
Insurance Co. of North America
and Rosemount, Inc.,
*Third-Party Defendants.*

(87-1724-J-2, 87-1766-J-2, 86-1146-J-2,
86-1567-J-2, 86-2621-J-2, 87-1986-J-2; CA A73802)

852 P2d 844

Martin W. Jaqua, Portland, argued the cause for third-party plaintiffs - appellants. With him on the briefs were John Folawn and Holmes, Folawn & Rickles, Portland.

Charles F. Adams, Portland, argued the cause for third-party defendant - respondent. With him on the brief were Hardy Myers and Stoel Rives Boley Jones & Grey, Portland.

Before Rossman, Presiding Judge, and De Muniz and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Third-party plaintiffs Underwriters of Interest (Underwriters) appeal from a summary judgment in favor of third-party defendant Deltak Corporation (Deltak). We reverse and remand.

This case arises out of the same transaction that is described in *Biomass One, L.P. v. S-P Construction (A68622)*, 120 Or App 194, 852 P2d 847 (1993). The relevant facts are set out in that opinion and are not repeated here. At issue in this case is the interpretation of an agreement between S-P Construction (S-P) and another subcontractor, Deltak, which required Deltak to provide boilers to S-P for the cogeneration power plant that S-P had agreed to construct for Biomass One, Ltd. Two provisions of that agreement are relevant. First, under the heading of "Warranty," the agreement provides:

"Performance data on the performance sheet are predicted under the operating conditions given on the same sheet. Performance is guaranteed and so stated on the performance or guarantee page of this proposal and if the heating surface is undamaged and kept clean by the purchaser."

Second, the "performance sheet," entitled "Fired Boiler Data," contains various specifications regarding the boilers Deltak was to provide, including:

| | |
|---|---|
| "Steam generated (lb/hr) | 175,000[1] |
| "* * * * * | |
| "Fuel | Wood |
| "Moisture | 40" |

The trial court concluded that, as a matter of law, those provisions require proof that the boilers actually were fired with fuel meeting the specifications on the performance sheet as a condition precedent to enforcement of the guarantee. When Underwriters, as subrogees of S-P, conceded that they could not establish precisely what type of fuel actually was used, Deltak moved for summary judgment, which the trial court granted. Underwriters argue that the trial court

---

[1] The Fired Boiler Data sheet originally specified a figure of 150,000. It later was changed to 175,000.

erred in granting summary judgment in favor of Deltak, because the agreement does not unambiguously contain any conditions precedent to enforcement of the guarantee. Thus, this case presents essentially the same issue that we addressed in *Biomass One, L.P. v. S-P Construction (A68622), supra.* As in that case, we review the trial court's conclusion that the agreement is unambiguous as a question of law. *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991).[2] If the agreement is ambiguous, then the trial court erred in granting summary judgment to Deltak. *Carlson v. Reservation Ranch*, 118 Or App 512, 516, 848 P2d 616 (1993); *Ziegler v. Bostwick*, 106 Or App 666, 668, 809 P2d 131, *rev den* 311 Or 644 (1991).

Deltak argues that the agreement unambiguously provides that enforcement of the guarantee is contingent on proof that the boilers were fired with wood fuel with a moisture content of 40 percent. It emphasizes the existence of the fuel specifications in the performance sheet and the provision in the guarantee that performance as promised is "predicted under the operating conditions given on the same sheet."

Underwriters argue that the agreement merely describes the capacity of the boilers, and that they are not required to establish that any particular fuel was burned to demonstrate that Deltak failed to supply boilers with the guaranteed capacity. They emphasize that the guarantee clause mentions nothing about fuel specifications as a condition to its enforcement; therefore, they should be allowed to prove through the testimony of experts that Deltak supplied boilers that failed to conform to the guarantee.

If anything, the language in this agreement is even less clear than the language at issue in *Biomass One, L.P. v. S-P Construction (A68622), supra.* Deltak's argument that the agreement conditions enforcement of the guarantee on proof of actual fuel use may be a reasonable interpretation, but it is not the only reasonable one that may be drawn from the language alone. The language could have been intended to

---

[2] The agreement provides that California law governs its interpretation. However, because there is no apparent conflict between the relevant principles of California and Oregon law, we are free to apply the latter. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 316, 696 P2d 1096, *rev den* 299 Or 314 (1985).

operate merely as a description of boiler capacity. The agreement does not explicitly state that use of any particular fuel is required to prove a breach of the guarantee. In contrast, it does state that "[p]erformance is guaranteed * * * if the heating surface is undamaged and kept clean by the purchaser." Thus, where the agreement sets forth explicit conditions, use of a particular fuel is not among them. The meaning of the disputed language is not "so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc., supra* n 2, 72 Or App at 317. The trial court, therefore, erred in concluding that the guarantee provision was unambiguous and in granting summary judgment in favor of Deltak.

Because we hold that the trial court erred in granting summary judgment for Deltak, we need not address Underwriters' other assignments of error.

Reversed and remanded.