Argued and submitted November 18, 2003, reversed and remanded April 14, 2004

WESTERN SURETY COMPANY,
a South Dakota corporation,
*Plaintiff,*

*v.*

FDS DIVING CONSTRUCTION
AND SALVAGE CO., INC.,
an Oregon corporation;
Fred D. Stambaugh; Cherie L. Stambaugh;
Joseph A. Stambaugh; and Dixie L. Stambaugh,
*Defendants.*

FDS MARINE, LLC,
Assignee FDS Diving Construction
and Salvage Co., Inc.,
an Oregon corporation;
Fred D. Stambaugh; Cherie L. Stambaugh;
Joseph A. Stambaugh; and Dixie L. Stambaugh,
*Appellants,*

*v.*

GENERAL CONSTRUCTION COMPANY,
*Respondent.*

0202-01814; A120099

88 P3d 293

Timothy W. Grabe argued the cause and filed the briefs for appellants.

Daniel L. Keppler argued the cause for respondent. With him on the brief were Susan E. Watts and Kennedy, Watts, Arellano & Ricks LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Third-party plaintiffs FDS Marine, LLC, FDS Diving Construction and Salvage Co., Inc., and their individual shareholders (collectively, FDS) appeal a summary judgment dismissing their claims against General Construction Company (General Construction) for breach of contract and *quantum meruit*. FDS contends that the trial court erred in entering summary judgment on their claims because there are genuine issues of material fact about whether a release excludes their claims and, if it does, whether General Construction is barred by waiver or estoppel from enforcing the release. We agree that, because the release is not unambiguous as a matter of law, the trial court erred in entering summary judgment.

The following facts are not in dispute. The United States Army Corps of Engineers awarded a construction contract to General Construction to build a "surface collector" at Bonneville Dam to allow young, migrating salmon to pass through the dam unharmed. General Construction, in turn, subcontracted with FDS to perform certain work on the project. During the course of the construction, the parties executed a number of change orders requiring FDS to perform work outside the scope of the contract.

Following completion of the work, the parties disagreed about how much FDS was to be paid for the extra work. FDS contended that General Construction's project superintendent assured it that "we'll work something out" and that "I'll take care of you." General Construction denies that any assurances were made. In the end, FDS contended that General Construction owed an additional $229,000 for the additional work.

The parties executed a "Final Release." The terms of the release are as follows:

### "FINAL RELEASE

"This Release is made in accordance with the provisions of Subcontract Number *6538.07* (Project: Bonneville Dam) including any and all Amendments and Change Orders

thereto, and executed between *F.D.S. Diving Co., Inc.*, Subcontractor and General Construction Company, Contractor.

"In consideration of the final payment in the amount of *Thirty-Five Thousand Three Hundred Thirty-One and No dollars* ($35,331.00), made or to be made to Subcontractor by Contractor, Subcontractor hereby unconditionally releases Contractor * * * from any and all liens and claims whatsoever arising out of or during the performance of said Subcontractor, * * * other than any such claims specifically expected [*sic*] from this Release with the consent of the Contractor. If 'none' so state:

"_____
_____
_____"

(Boldface and underscoring in original.)

Meanwhile, FDS failed to pay certain union benefits; it contended it did not have the money to do so because of General Construction's failure to pay all it should have paid for the change orders. The union benefits were covered by a bond provided by Western Surety Company (Western Surety), which then filed a complaint against FDS. FDS stipulated to the entry of judgment for Western Surety on the bond claim. It then initiated this third-party action against General Construction.

FDS argued that General Construction owed a total of $229,000 for the change orders. General Construction asserted that the claim is barred by the general release "from any and all liens and claims whatsoever" arising out of the work on the Bonneville Dam project and moved for summary judgment. FDS replied that the release was not intended to cover the work that was performed outside the scope of the subcontract. According to FDS, the release itself expressly contemplates that there may be outstanding claims not covered by the release. In any event, FDS argued, General Construction is barred from relying on the release by the equitable doctrines of waiver or estoppel. FDS also moved to supplement the record with two documents that it contended would have supported its construction of the release. The trial court denied the motion to supplement the record,

granted General Construction's motion for summary judgment, and dismissed FDS's claims.

■ On appeal, FDS assigns error to the entry of summary judgment and to the denial of the motion to supplement the record. We begin with the contention that the trial court should not have granted General Construction's motion for summary judgment. FDS argues that there is at least a genuine issue of material fact about the scope of the release. As it did before the trial court, FDS argues that the release, at best, is ambiguous, which precludes the determination of its meaning as a matter of law. As it did before the trial court, General Construction argues that the release is unconditional and unambiguous.

■ A release is a contract that is subject to the ordinary rules of contract construction. *Ristau v. Wescold, Inc.*, 318 Or 383, 387, 868 P2d 1331 (1994). Disputes over the meaning of a contract may be disposed of by summary judgment only if the contract's terms are unambiguous. *Biomass One, L.P. v. S-P Construction (A68622)*, 120 Or App 194, 200, 852 P2d 847 (1993). Whether a contract is ambiguous is a question of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). A contract is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den*, 299 Or 314 (1985).

In this case, the release states that FDS "unconditionally releases" General Construction "from any and all liens and claims whatsoever arising out of or during the performance of" FDS. It is, indeed, a broad release. The release, however, then includes a clause that excludes from the scope of the release "claims specifically expected [*sic*] from this release with the consent of the Contractor," that is, General Construction. There follows the sentence "[i]f 'none' so state:" and then three lines. The parties left the lines blank.

It is the meaning of the exception clause that is at the heart of the parties' dispute. The clause contains several drafting and interpretive challenges. First, the release refers to "claims specifically *expected*." (Emphasis added.) It appears that the word "expected" is a typographical error. FDS contends that the intended word was "excepted," and General Construction agrees. Second, and more vexing, is the

fact that the release requires that any claims not covered be "specifically" excepted. There is no mention of any such specifically excepted claims in the release. At the same time, the release requires that, if there are no exceptions, then the parties must "so state" in the blank space provided. The parties left blank the space for indicating that there are no specifically excepted claims.

What the parties meant by that phrasing is anyone's guess. FDS, on the one hand, contends that the parties orally had agreed that there were additional claims not intended to be covered by the release, and that is why the parties left the space in the form blank. General Construction, on the other hand, contends that, in light of the fact that the release applies to all claims unless otherwise "specifically" excepted, the blank space should be understood as a space for such exceptions; there being none, the release covers all claims arising out of FDS's work on the Bonneville Dam project.

Neither party's construction is without its flaws. To the contrary, each party's reading of the release is directly contradicted by its wording. FDS's construction fails to conform to the requirement that any exceptions to the release must be "specifically" described. At the same time, General Construction's construction cannot be reconciled with the express requirement that, if there are no excepted claims, the parties must expressly say so by filling in a blank provided for that purpose.

FDS argues that the conflict is precisely why the release is ambiguous and why the construction of the release cannot be determined by way of summary judgment. The ambiguity of the release, it argues, requires an examination of extrinsic evidence concerning the parties' intentions by a trier of fact. General Construction insists that the proper course is to conclude that the requirement in the release to write "none" in the space provided if there are no excepted claims, simply does not mean what it says. According to General Construction, we should construe that requirement as a redundancy and ignore it in favor of the requirement that any exceptions to the release be "specifically" stated.

FDS has the better of that argument. As we have noted, summary judgment is not the proper vehicle for determining the meaning of an ambiguous contract. *Biomass One,*

*L.P.*, 120 Or App at 200. In this case, General Construction's reading of the agreement ultimately may be the more plausible. But we cannot say that, as a matter of law, the meaning of the release is so clear as to preclude doubt by reasonable persons. *Deerfield Commodities*, 72 Or App at 317. In particular, we cannot say, without some doubt, that the parties did not mean what they plainly stated in the release, that, if there are no excepted claims, the parties must say so in the blank space provided.

We therefore conclude that, because the scope of the release is not unambiguous, the trial court erred in granting summary judgment to General Construction. In light of that conclusion, we need not address FDS's other assignment of error.

Reversed and remanded.