Submitted on briefs October 4, affirmed October 24, 1956

# BRUNER *v.* OREGON BAPTIST RETIREMENT HOME

### 302 P. 2d 558

Wendell E. Cameron and B. G. Skulason, Portland, for appellant.

Barzee, Leedy & Erwin, Portland, for respondent.

TOOZE, J.

This is a suit for specific performance of a contract and for damages, brought by Jane L. Bruner, as plaintiff, against Oregon Baptist Retirement Home, a corporation, as defendant. A decree was entered in favor of the plaintiff and against the defendant for specific performance of the contract and for damages in the sum of $956.40. Defendant appeals.

Defendant is an Oregon corporation and, according to its constitution, is organized to "provide a retirement home for members of the Columbia Baptist churches of Oregon and their friends, where they may enjoy Christian fellowship and care during their retirement years; to carry on such a home that will provide and promote spiritual, moral and physical welfare to those to whom the services may be available; * * *." It maintains a home for the aged in Portland, Multnomah county, Oregon. To obtain entrance to the home one must make written application therefor upon forms provided by the defendant. If the application is accepted by the defendant, a written contract is entered into between the defendant and the applicant, the form of contract being that prepared by the de-

fendant. A fixed sum of money is agreed upon between the applicant and the defendant as a consideration to be paid by the applicant for the care to be furnished by the defendant. The sum agreed upon is based upon a certain amount for each month and the life expectancy of the applicant.

In 1948 the plaintiff, then of the age of 84 years, filed her application with the defendant for entry into the home maintained by defendant. Her application was accepted, and on August 16, 1948, plaintiff and defendant entered into a written agreement, the important provisions of which are the following:

"THE OREGON BAPTIST RETIREMENT HOME of Portland, Oregon, hereby agrees to receive the party of the second part into its Home as guest for life and will provide the said second party (a) a good and comfortable lodging, (b) board, (c) the needed care by the Home nurse, medical treatment by the physician of the Home in case or ordinary or usual disease, except insanity, (d) ward care in a hospital as supervised by the Home Physician, (4) [sic] laundry, (f) Christian literature available in the Home. In case of insanity provision will be made according to statement 4 B under rules of admission on Page 5 of our By-Laws.

"The party of the second part hereby agrees to make consideration in the amount of Thirty-eight Hundred and Seventy-five Dollars ($3,875.00) less the sum of Two Hundred Sixty Dollars ($260.00) heretofore paid in monthly installments. *Balance due Thirty Six Hundred and Fifteen Dollars* ($3,615.00), *which shall become the absolute property of the first party.*

"\* \* \* \* \*

"It is understood and agreed that this agreement is based upon the application heretofore filed by the party of the second part and said application is made a part of this agreement. The By-Laws, rules and regulations of this Home, referred to

herein, are those now in force or which may hereafter be adopted in accordance with the Constitution and By-Laws of the Home.'' (Italics ours.)

Plaintiff paid to the defendant the full sum of $3,875, fixed by the contract. This gross amount was based upon an anticipated cost of $65 per month for plaintiff's care according to her life expectancy as set forth in the Commissioner's Life Expectancy Table.

On or about December 5, 1951, plaintiff suffered an accident which resulted in paralysis of the left leg. On December 10, 1951, plaintiff was sent by the defendant to the Emanuel hospital in Portland, Oregon, for hospital care and attention. From the Emanuel hospital plaintiff was sent by the defendant to the Wildwood Rest Home in Portland, Oregon, for care. At all times since her accident in December, 1951, and now plaintiff has been and is bedridden. The defendant is not licensed as a hospital nor to care for bedridden patients, and is not equipped to render such services. The Wildwood Rest Home is so equipped. The defendant paid the cost of plaintiff's hospital care at Emanuel hospital and until May, 1955, paid for her care at the rest home. In May, 1955, defendant attempted to terminate its contractual responsibility to plaintiff, but did pay for her care up to approximately October 1, 1955. Thereafter, it refused to recognize any liability under its agreement with the plaintiff. This suit was then commenced to compel defendant to perform its duties under its agreement with the plaintiff and for damages in the sum of money expended by plaintiff for her own care subsequent to October 1, 1955.

■■ The only question for our consideration on this appeal is an interpretation of the agreement between the plaintiff and defendant. Under its agreement,

defendant undertook to care for the plaintiff during the remainder of her natural life. As a part of this care it agreed under subd. (d) of the first paragraph of the agreement to furnish to plaintiff, in cases of need, "ward care in a hospital as supervised by the Home Physician." In other words, it agreed in cases of necessity to furnish plaintiff hospital care and attention outside its home, limited only by the provision that plaintiff would be furnished ward care only, as distinguished from a private room in a hospital. In our opinion, the provisions of this contract are definite, certain, and wholly unambiguous. It is axiomatic that such a contract must be construed according to its plain terms. The contracts of parties sui juris are solemn undertakings, and in the absence of any recognized ground for denying enforcement, they must be enforced strictly according to their terms.

 Up to the time of trial it appeared that the defendant had paid out in excess of $9,000 for and on account of the care given plaintiff under the agreement. It is thus apparent that the defendant has lost money under its contract with plaintiff, but that fact is wholly unimportant in so far as the issues in this case are concerned. However, it might be well to point out that the money paid by each person entering defendant's home immediately becomes the property of defendant and is retained by the defendant even though the guest should live but a week or two after entering the home. In other words, many who enter the home do not live out their life expectancy as contemplated by the agreement, and the unused funds of those persons become available to make up the deficiency arising in the accounts of those who live beyond their life expectancies or suffer disability requiring hospital care, as did the plaintiff. We approve of what was said by the able

trial judge in deciding the issues immediately upon the termination of the trial. He said:

"* * *; the defendant seems to take the attitude that it would be relieved of obligations because they extend over a period of time farther than they think they should be covered.

"The testimony in this case from the good Doctor who testified, Dr. Salstrom is that, we talked to the daughters and asked to be relieved of some of the burden.

"Now, that would have been a voluntary relief. They are asking voluntarily, to be relieved of some of the contractual obligations that have been assumed. That seems to be their attitude here. That is the actual language that the witness used. And, of course when it comes to a matter of contract the other side is not obliged to relieve them of any obligation assumed by that contract unless they want to do so voluntarily.

"The Court can't take judicial notice that the defendant can't take care of this lady in their institution. There is no evidence been introduced outside of the oral testimony of one of the witnesses for the defendant that they can't take care of her there, but even if they can't under the doctrine of cy pres they have to furnish her under their contract with similar services. They simply can't,—there is nothing in the contract that would exclude service simply because the plaintiff became bedridden; they simply can't say to one of their contractees who becomes bedridden that we are through with you. They assume that obligation when they take them. This is an obligation that they assumed voluntarily; nobody asked them to establish this home. They have instituted this home voluntarily for high purposes, but they simply can't have a board meeting and say, we have determined that we won't take care of your future, when they have entered a contract so to do.

"In view of these facts the decree of this Court will be in favor of the plaintiff for the relief prayed for."

The decree is affirmed.