Submitted on remand from the Oregon Supreme Court November 6, 2002, reversed and remanded June 12, 2003

# R. L. COATS,
*Respondent,*

*v.*

# STATE OF OREGON,
by and through its
# DEPARTMENT OF TRANSPORTATION
and by and through its
Bureau of Labor and Industries,
*Appellant.*

## 97 CV 0285 MS; A105379

71 P3d 172

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, for appellant.

Martin E. Hansen, Philip R. Anderson, and Karnopp, Petersen, Noteboom, Hansen, Arnett & Sayeg, LLP, for respondent. With them on the supplemental brief was Josh Newton.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

This case is before us on remand from the Oregon Supreme Court. *Coats v. ODOT*, 334 Or 587, 54 P3d 610 (2002). We reverse and remand.

The Supreme Court concluded that we erred in basing our initial decision, *Coats v. ODOT*, 170 Or App 32, 11 P3d 258 (2000), on defendant's argument concerning the construction of the term "upon all public works" as used in ORS 279.350 and as implemented in OAR 839-016-0004 (1997) and OAR 839-016-0035. The court determined that "the validity of BOLI's rules is not relevant to resolving whether ODOT is liable for breach of contract * * *. The circuit court, therefore, lacked jurisdiction to review BOLI's rules." *Coats*, 334 Or at 597. The court concluded:

> "The circuit court's interpretation of OAR 839-016-0004(19)(c) [1997] as a term of the contract provided the basis for its subsequent conclusion that plaintiff had complied with that contractual provision, had not breached the contract, and was entitled to summary judgment. *That contract interpretation*, rather than the administrative law issue that the circuit court did not (and could not) reach, also *is the legal issue that the Court of Appeals should have considered on review*. We remand to give that court the opportunity to do so."

*Id.* at 598 (emphasis added).

The issue, as framed by the Oregon Supreme Court for us to decide on remand, is whether the parties' contract, which incorporated the BOLI administrative rules and definitions found in OAR 839-016-0004(19) (1997), required plaintiff to pay the prevailing wage to workers at his borrow pit located 8 to 10 miles from the construction site. Generally, contractors such as plaintiff are required to pay the "prevailing rate of wage" to workers on all "public works." ORS 279.350. BOLI rules implementing that statute provide relevant definitions for "public works" and, in OAR 839-016-0004(19) (1997), specifically define "site of work." Plaintiff maintains that, with respect to this dispute, the workers at his borrow pit were exempt from the prevailing wage

requirements for workers on the "site of work," given the following provisions of OAR 839-016-0004(19) (1997):

> "(b)   Except as provided in paragraph (c) of this section * * * *borrow pits* * * * and similar facilities, *are part of the site of work provided they are dedicated exclusively, or nearly so, to the performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them.* Such facilities which are established by a supplier of materials for the project after the opening of bids shall be deemed to be dedicated exclusively to the performance of the contract or project.
>
> "(c)   * * * *[B]orrow pits* * * * and similar facilities of a commercial supplier or materialman which *are established by a supplier of materials for the project before opening of bids and not on the project site, are not included in the site of work.* Such permanent, previously established facilities are not part of the site of the work, even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract or project."

(Emphasis added.)

The trial court found that plaintiff's borrow pit was established before the opening of bids and was not on the project site.[1] Consequently, the court determined that, under OAR 839-016-0004(19)(c) (1997), plaintiff was not required to pay prevailing wage rates to the borrow pit workers. It is that "contractual" determination that we are directed to review on remand.

In reviewing interpretations of disputed contractual provisions, we examine "the text of the disputed provision, in the context of the document as a whole." *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). A contract is ambiguous if it can reasonably be given more than one plausible interpretation, *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 25, 22 P3d 739 (2001), but "[u]nambiguous contracts must be

---

[1] The court observed, in part:

> "Based on the uncontroverted facts from the affidavits and the exhibits, the mining site owned by [plaintiff] was established prior to the opening of bids. The fact that a different kind of material was taken from the actual hole or a different kind of material other than the rock, is irrelevant. It was taken from the mining site. I think these are all facts that are uncontroverted."

enforced according to their terms," *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991). Generally, if a contract is ambiguous, we may look to extrinsic evidence of the parties' intent and to maxims of construction. *Yogman*, 325 Or at 363-64. However, when an administrative rule has been incorporated by reference into a contract, "the meaning of the administrative rule * * * is a question of law for the court." *Monson v. State of Oregon*, 136 Or App 225, 235, 901 P2d 904, *rev den*, 322 Or 361 (1995). *Cf. Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 558-59, 871 P2d 106 (1994) (an ambiguity in a statute or constitution does not create an issue of fact to be resolved by the presentation of evidence).

The contract here, which concerns a highway construction project, incorporates by reference certain "standard specifications." Standard Specification 00170.00 requires plaintiff to "[c]omply with all laws, ordinances, codes, regulations and rules * * * that relate to the work or to those engaged in the work." That specification's definition of "laws" unambiguously includes administrative rules such as OAR 839-016-0004(19) (1997), because that administrative rule relates to when prevailing wage rates are to be paid to workers upon public works and thus relates "to those engaged in the work" at issue in the contract.

With that understanding, we turn to the trial court's "interpretation of [OAR 839-016-0004(19) (1997)] as a term of the contract." *Coats*, 334 Or at 587. The trial court's allowance of summary judgment depended on two subsidiary determinations: (1) plaintiff's borrow pit was "established * * * before the opening of bids" on the highway project; and (2) plaintiff's borrow pit "was not on the project site." OAR 839-016-0004(19)(c) (1997).

■■ We turn to the first of those two determinations. In its supplemental brief on remand, defendant argues:

"Under the undisputed facts below, the pit from which plaintiff removed the rock for the highway project was not opened until after bid opening. Plaintiff had, however, removed a different material from a different pit on the same parcel of land before bid opening. The trial court held that the fact that it was a different material was irrelevant,

and that is certainly one way in which the rule can be read. However, BOLI's interpretation, that a different pit and a different, non-construction material does not qualify as a pre-existing borrow pit, is equally plausible and is entitled to deference from this court."

We agree. When an administrative agency interprets its own administrative rules, we defer to its interpretation if it is "plausible." *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). We apply that principle here. Although the rule in question is a BOLI rule and defendant ODOT's interpretation of it would not require deference, BOLI also is named as a defendant in the case, and the materials submitted on summary judgment demonstrate that BOLI has, in fact, interpreted its rule and applied it to plaintiff's borrow pit.[2]

The trial court based its decision on the fact that the material used on the present contract was "taken from the mining site," and that the mining site was established before the opening of bids, as shown by evidence of plaintiff's permit to mine issued several years before the opening of bids, and by evidence of plaintiff's multiple sales of bentonite from the site before the opening of bids. The trial court thus assumed that a "borrow pit" consisted of an entire "mining site." We do not share that assumption. The term "borrow pit" has not been specifically defined anywhere in Oregon law, but it has a well-defined general meaning: "an excavated area where material (as earth) has been borrowed to be used as fill at another location." *Webster's Third New Int'l Dictionary* 257 (unabridged ed 1993). Neither party suggests that "borrow pit" is a term of art in Oregon law that has any meaning other than its common meaning. Unfortunately, that definition does nothing to clarify whether a mining site that has bentonite removed from one location and hard rock removed from a location several hundred feet away contains two borrow pits, or one.

---

[2] That evidence consists of a letter and an affidavit from a BOLI compliance worker to plaintiff indicating that an investigation had revealed that plaintiff had failed to pay the correct prevailing wage rate, that BOLI would take no further action, but that it would consider taking action to place plaintiff on a list of companies ineligible to bid on public contracts should plaintiff be found to have refused to pay prevailing wage rates in the future.

Given the general nature of the definition of "borrow pit," we are unable to say that BOLI's definition is not plausible. We conclude that the trial court erred in concluding that plaintiff's "borrow pit" was established "before opening of bids," and thus that plaintiff prevailed under OAR 839-016-0004(19)(c) (1997). We thus need not address the question whether the borrow pit was "not on the project site" within the meaning of OAR 839-016-0004(19)(c) (1997).

Plaintiff's summary judgment motion, however, relied alternatively on OAR 839-016-0004(19)(b) (1997), which, as plaintiff points out, provides that borrow pits "which are established * * * for the project after the opening of bids" are included in the site of work only if "they are dedicated exclusively, or nearly so, to the performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them." Because the trial court disposed of plaintiff's summary judgment motion based on OAR 839-016-0004(19)(c) (1997), it did not reach plaintiff's arguments concerning OAR 839-016-0004(19)(b) (1997). We thus remand for the trial court to consider plaintiff's arguments under that section in the first instance.

Reversed and remanded.