Argued and submitted August 6, 2003, reversed and remanded June 9, petition for review denied October 14, 2004 (337 Or 547)

## Robert J. KOCH,
*Appellant,*

*v.*

## Stefan O. SPANN,
*Respondent.*

## 002088; A119099

92 P3d 146

Leslie A. Kocher-Moar argued the cause for appellant. With her on the briefs were Robert D. Scholz and MacMillan, Scholz & Marks, P.C.

James G. Driscoll argued the cause for respondent. With him on the brief were John A. Bennett, Andrew C. Lauersdorf, and Bullivant Houser Bailey P.C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

Armstrong, J., dissenting.

## LANDAU, P. J.

Plaintiff owns a duplex and maintained fire insurance on the building through United Services Automobile Association (USAA). Defendant is a tenant in the duplex. A fire—which plaintiff believes defendant started—damaged the duplex. USAA paid plaintiff under the fire insurance policy and then initiated this subrogation action in the name of plaintiff against defendant. The trial court entered summary judgment dismissing the subrogation claim. Citing *Sutton v. Jondahl*, 532 P2d 478 (Okla Ct App 1975), the trial court concluded that the insurer of a building may not recover from a tenant for damage to the building because, as a matter of law, the tenant is considered an "implied co-insured" under the building owner's policy. USAA appeals, arguing that the trial court erred in adopting the rule of the Oklahoma Court of Appeals because the rule is inconsistent with the wording of the policy and with existing Oregon law. We agree and reverse and remand.

The relevant facts are not in dispute. As we have noted, plaintiff insured his duplex through USAA. Plaintiff is the only named insured on the policy. Defendant was a month-to-month tenant at the duplex. It is undisputed that the rental agreement does not require the landlord, plaintiff, to maintain fire insurance on the premises. What the rental agreement does say includes the following:

> "LANDLORD IS NOT RESPONSIBLE FOR TENANT [*sic*] PERSONAL PROPERTY. TENANT IS ADVISED TO PROCURE RENTER INSURANCE TO PROTECT THEMSELVES [*sic*] IN THE EVENT OF LOSS.
>
> "* * * * *
>
> "TENANT AGREES:
>
> "* * * * *
>
> "5.   * * * To take particular caution against cigarettes and other fire hazards.
>
> "6.   To be responsible for any damages to premises and/or furnishings caused by their [*sic*] negligence.
>
> "* * * * *

"9.  To not destroy, damage, deface or remove any part of the premises or permit any person to do so and to assume all liability for damages other than ordinary wear and tear.

"* * * * *

"13.  To keep locked all doors and gates on premises. To notify [owner/agent,] (IMMEDIATELY) IN WRITING, if locks fail to operate. The Owner/agent will not be responsible in any way for loss/damage to articles or property belonging to tenant/s. TENANT SHOULD MAINTAIN FIRE AND THEFT INSURANCE FOR HIS/HER PROPERTY."

Defendant, while a tenant at the duplex, allegedly decorated a live Christmas tree with lit candles and sparklers. The tree caught fire and caused damage to the duplex totaling $215,242.74. USAA paid plaintiff $200,543.72 under the policy and then sought to recover that amount from defendant through this subrogation action.

Defendant asserted that, as a matter of law, the subrogation action against him cannot be maintained for two reasons. First, he argued, the Oregon courts should adopt the "*Sutton* rule" that tenants are implied coinsureds of any landlord's fire insurance policy and therefore cannot be subject to subrogation under the same policy. Second, he argued, plaintiff effectively waived any negligence claim for fire loss under the terms of the rental agreement. In response, plaintiff argued, first, that the "*Sutton* rule"—at least as defendant broadly characterized it—is inconsistent with current Oregon case law and, second, that the rental agreement expressly provides that the tenant—not the landlord—is liable for fire damage and other damage resulting from the tenant's negligence. The trial court entered summary judgment for defendant, invoking *Sutton*.

On review of the court's ruling, we examine the summary judgment record to determine whether there exist genuine issues of material fact and whether defendant was entitled to judgment as a matter of law. ORCP 47 C. In this case, the sole disputed issue is the meaning of the rental agreement and, specifically, whether it expressly or implicitly precludes USAA's subrogation claim against defendant.

■■ Subrogation is an equitable doctrine that is based on a theory of restitution and unjust enrichment. *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 520-21, 520-21 n 4, 693 P2d 1296 (1985). It enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party who, in good conscience, should be required to pay. *Id.* at 520-21 n 4, 521. In the insurance context, subrogation permits an insurer in certain instances to recover what it has paid to its insured by, in effect, standing in the shoes of the insured and pursuing a claim against the wrongdoer. *Furrer v. Yew Creek Logging Co.*, 206 Or 382, 388, 292 P2d 499 (1956); *Safeco Ins. Co. v. Russell*, 170 Or App 636, 640, 13 P3d 519 (2000), *rev den*, 311 Or 674 (2001).

■ The subrogated party acquires precisely the same rights as the party for whom it substitutes, and no more than that. *United States F. & G. Co. v. Bramwell*, 108 Or 261, 277-78, 217 P 332 (1923). Thus, in the insurance context, an insurer may pursue a subrogation claim only if its insured could have pursued the underlying claim, and the insurer's claim is subject to all of the defenses that could have been asserted if the insured had pursued the underlying claim. *See generally* 16 *Couch on Insurance* § 222:14 (3d ed 2000) (and cases cited therein) (stating principle). As a corollary of that general principle, an insurer has no right to subrogation against its own insured; the insured could not have pursued the underlying claim against himself or herself. *Id.* at § 224:1.

In this case, defendant argues that USAA's subrogation claim against him cannot be maintained for two reasons. First, he argues that the claim is subject to a defense that could have been asserted against plaintiff, that is, that, in the rental agreement, plaintiff waived any claims for damage to the premises occasioned by defendant's negligence. Second, he argues that, even if the claim is not subject to that defense, in accordance with the rule of the Oklahoma *Sutton* decision, USAA has no right to pursue a claim against him, because—as a tenant of the premises—he should be treated as if he were an insured and thus not subject to a subrogation claim.

■■ We begin with defendant's contention that USAA's claim is subject to a defense of waiver, because, if it is, we need not address whether to adopt the so-called *"Sutton* rule." A rental agreement is a contract the interpretation of which is subject to ordinary rules of contract construction. *Housing Authority of Portland v. Martini*, 141 Or App 1, 4, 917 P2d 53 (1996). The Supreme Court has described those rules of construction as consisting of three steps. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). First, we must examine the text of the disputed provision to determine whether the agreement is "ambiguous." If the disputed provision cannot be said to be unambiguous as a matter of law, then disputes about its meaning ordinarily cannot be resolved by way of summary judgment. *Western Surety Co. v. FDS Diving Construction*, 193 Or App 1, 6, 88 P3d 293 (2004); *Biomass One, L.P. v. S-P Construction (A68622)*, 120 Or App 194, 200, 852 P2d 847 (1993). Instead, the court must proceed to the second of the three analytical steps and examine extrinsic evidence of what the parties intended the agreement to mean, as a matter of fact. *Yogman*, 325 Or at 363-64. If examination of the evidentiary record does not resolve the ambiguity, the court must proceed to a third and final analytical step, namely, applying an appropriate maxim of contractual interpretation. *Id.* at 364.

■■ We first consider whether the rental agreement is ambiguous. An agreement is "ambiguous" when it is capable of more than one reasonable construction. *Coats v. ODOT*, 188 Or App 147, 150, 71 P3d 172 (2003). Whether an agreement is ambiguous is a question of law. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). In examining the text of an agreement, we are cautioned to read it as a whole, giving effect to all provisions if possible. ORS 42.230; *New Zealand Ins. v. Griffith Rubber*, 270 Or 71, 75, 526 P2d 567 (1974). Likewise, we cannot ignore provisions that are expressly included in the agreement; if a construction is inconsistent with any of those express terms, it is not reasonable. *See* ORS 42.230 (in construing a written document, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted"); *see also Bruner v. Oregon Baptist Home*, 208 Or 502, 506, 302 P2d 558 (1956)

(interpretations of contract inconsistent with express provisions are not permissible).

In this case, there is nothing in the rental agreement that may be fairly read as a waiver of plaintiff's right to pursue a claim against defendant for damage that has been caused to the premises by defendant's negligence. To the contrary, the contract expressly—and unambiguously—permits such a claim.

As we have noted, the rental agreement provides that the tenant—defendant—is "responsible for any damages to premises and/or furnishings caused by their [*sic*] negligence." (Emphasis added.) In addition, the agreement provides that the tenant—defendant—agrees "[t]o not destroy, damage, deface, or remove any part of the premises or permit any person to do so and to assume all liability for damages other than ordinary wear and tear." Nothing in the agreement qualifies the obligation to be responsible for "*any* damages to premises" and "to assume *all liability* for damages other than ordinary wear and tear." (Emphasis added.)

Defendant acknowledges that nothing in the rental agreement *expressly* waives plaintiff's right to pursue a claim against him for negligent damage to the premises. He nevertheless insists that the agreement can be read *implicitly* to waive that right. According to defendant, paragraph 13 of the agreement expressly requires him to "maintain fire and theft insurance for his * * * property." Because the agreement requires him to maintain fire insurance on only his own personal property, defendant argues, the agreement implicitly suggests that the owner—plaintiff—is responsible for insuring and suffering any losses to anything other than that personal property.

The negative inference defendant proposes is untenable, for at least two reasons. First, it takes the reference to maintaining fire and theft insurance out of context. Paragraph 13 states that the tenant agrees:

"13.   To keep locked all doors and gates on premises. To notify [owner/agent,] (IMMEDIATELY) IN WRITING, if locks fail to operate. The Owner/agent will not be responsible in any way for loss/damage to articles

or property belonging to tenant/s. TENANT SHOULD MAINTAIN FIRE AND THEFT INSURANCE FOR HIS/HER PROPERTY."

Plainly, that paragraph is a disclaimer, not an assertion of the owner's responsibility.

Second, defendant's proposed inference directly contradicts what the agreement expressly states, namely, that defendant is responsible for *"any* damages to premises" and is "to assume *all liability* for damages other than ordinary wear and tear." (Emphasis added.) To adopt defendant's proposed construction would require us to hold that "any damages" does not really mean what it says and that "all liability" likewise means something less than "all liability." The latter reference to defendant's express assumption of liability for damage "other than ordinary wear and tear" is especially difficult to reconcile with his suggestion that he actually is liable for damage to his personal property alone. "[O]rdinary wear and tear" clearly refers to property other than defendant's own possessions.[1]

■ We conclude that nothing in the rental agreement reasonably may be construed as a waiver—express or implied—of plaintiff's right to seek damages from defendant for his negligence. We therefore turn to the question whether to adopt the Oklahoma *Sutton* rule, which defendant suggests stands for the proposition that an owner's insurer may never maintain a subrogation claim against a tenant because all tenants should be treated as "implied co-insureds" of an owner's fire insurance policy on the rental premises.

In *Sutton*, the landlord's fire insurance carrier sued a tenant to recover for loss caused by the tenant's negligence. The Oklahoma Court of Appeals held that the carrier could not maintain the claim against the tenant because the tenant

---

[1] The dissent argues that defendant's reading of paragraph 13 is at least reasonable, rendering the agreement subject to the rule that it must be construed against the drafter. We disagree with the dissent's premise. Such a reading of paragraph 13 is not reasonable because it directly contradicts the liability provisions that we have cited. An ambiguity cannot be created merely by drawing an inference from a paragraph in a vacuum, particularly when that inference is directly at odds with what the agreement elsewhere expressly states.

was, in effect, a "co-insured" on the policy. The court explained its reasoning in the following terms:

> "Under the facts and circumstances in this record, the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. * * * And as a matter of sound business practice, the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental."

532 P2d at 482.

A number of courts have followed a similar course, holding that, as a matter of law, a landlord's insurer may not maintain a subrogation claim against a tenant because the tenant is a coinsured. *See, e.g., Cascade Trailer Court v. Beeson*, 50 Wash App 678, 687, 749 P2d 761 (1988) ("We adopt the reasonable expectations rationale of the *Sutton* line of cases.").[2]

Other courts, however, have criticized the *Sutton* approach to waiver of subrogation, reasoning that it is questionable as an empirical matter whether tenants actually pay for insurance through their rent and that, in any event, it is illogical to assume that landlords intend to carry tenants as coinsureds where the lease says nothing about the matter and there is no evidence that the parties even discussed it. *See, e.g., Page v. Scott*, 263 Ark 684, 567 SW2d 101, 103-04

---

[2] The parties expend much effort debating whether *Sutton* represents the "majority" rule. Defendant contends that the "great majority" of decisions from other jurisdictions sides with *Sutton* and that an "extreme minority" of courts disagree. Plaintiff, on the other hand, argues that the majority actually has declined to follow *Sutton* and has chosen to limit the case to its facts. We are not particularly impressed with characterizations of a doctrine as the "majority" or "minority." We will give due consideration to all decisions of other jurisdictions but will be persuaded only by the soundness of their reasoning and their consistency with Oregon law.

(1978) ("The fiction that, by paying the rent, [tenant] paid the insurance premium is not appropriate. There is no evidence that [tenant] paid any greater rent because of the insurance than he would have paid had [landlord] not taken insurance. * * * Such a fiction ignores the fact that more often than not the market, i.e., supply and demand, is the controlling factor in fixing and negotiating rents.").

Still others have concluded that whether a landlord's insurer may maintain a subrogation claim against a tenant depends on the particular wording of the rental agreement and whether it suggests that the parties intended that the tenant not be liable for damage to the premises occasioned by the tenant's own negligence. *See, e.g., Fire Ins. Exchange v. Hammond*, 99 Cal Rptr 2d 596, 601 (Cal App 4th Dist 2000) ("it appears the subrogation issue is generally resolved on a case-by-case basis, dependent on the parties' reasonable expectations in light of the particular lease terms").

Oregon courts have not directly addressed whether to adopt the reasoning of *Sutton* as such. The Supreme Court has addressed the issue of waiver of subrogation claims, however, and the decision in this case must be consistent with that case law. In *Waterway Terminals v. P.S. Lord*, 242 Or 1, 9, 406 P2d 556 (1965), the owner of a large dock and warehouse contracted with the defendant to construct a conveyor system for handling cargo from dockside to the warehouse. The contract expressly provided: "OWNER TO FURNISH FREE OF CHARGE * * * [f]ire insurance in the amount equal to the value of the equipment * * *." *Id.* at 11. While the defendant was welding at one of the cargo lift installations, a fire broke out that caused a great deal of damage. *Id.* at 9. The owner brought an action against the defendant, and the defendant asserted as a defense the rule of a number of other jurisdictions that

"an agreement of the parties to a lease obligating the landlord to carry insurance on the leased premises is a complete defense to an action by the landlord, or by his insurer as subrogee, against the tenant for negligence in causing a fire which damaged or destroyed the leased premises."

*Id.* at 21. The owner argued that the case was controlled by another provision of the contract that relieved the owner of liability for acts of the defendant's negligence. *Id.* at 17.

The Supreme Court agreed with the defendant. The court reasoned that, if the owner were permitted to bring an action for damages against the defendant, then the defendant could get no benefit of the contract provision that required the owner to carry insurance on the premises. Referring to the cited cases, the court explained:

> "We think * * * the controlling consideration in the decision of these cases was the general understanding of what fire insurance means. It cannot be assumed that in negotiations for a contract a party knowingly asks for something which would be of no value to him. That would be this case if plaintiff's construction of the insurance clause were approved."

*Id.* at 22-23.

The court employed the same reasoning in *Koennecke v. Waxwing Cedar Prod.*, 273 Or 639, 543 P2d 669 (1975). In that case, the lessor brought an action against the lessee for fire damage that the lessee caused to the leased premises. The lessor had agreed that it would maintain "full fire insurance coverage on all of the leased property for all of the parties and that the premiums therefor were included in the monthly lease payments." *Id.* at 642-43. On the basis of the lessor's obligation to provide insurance, the court held that the lessor had waived any claim against the lessee for fire damage to the premises. Quoting from *Waterway Terminals*, the court explained that the obligation to obtain full fire insurance coverage would have no meaning if the lessor were permitted to proceed against the lessee. *Koennecke*, 273 Or at 646.

Thus, in both cases, the court recognized a complete defense to either a direct action or a subrogation claim *based on the landlord's contractual obligation to maintain fire insurance.* In both cases, the court reasoned that, permitting the owner or lessor to proceed against the tenant or lessee would deprive the latter of the benefit of what it bargained for: insurance against liability for its own negligence. The reasoning of the court thus places the Oregon courts squarely with those courts that have concluded that whether there is a

waiver of subrogation depends on the facts of each case and the terms of each rental agreement.[3]

In this case, it is undisputed that there is no contractual obligation to maintain fire insurance on the premises. Defendant, in other words, did not bargain for fire insurance coverage. The agreement in effect left it to the parties to decide whether they wished to maintain insurance on the premises. That being the case, the rationale of *Waterway Terminals* and *Koennecke* does not apply. The litigation bar in both cases was predicated on the need to give the tenant the benefit of its bargain, namely, fire insurance. In this case, insurance simply was not bargained for one way or the other. There is, therefore, no basis for us to conclude that plaintiff is barred from pursuing any claim against defendant.

Defendant insists that *Waterway Terminals* and *Koennecke* actually could be read not to foreclose adopting the *Sutton* rule. Even assuming for the sake of argument that that is so, we would decline to embrace the categorical rule of the Oklahoma court. Even if it were not precluded by the reasoning of existing precedent, the *Sutton* rule remains contrary to the presumption in Oregon that contracts do not create immunity from liability. *See, e.g., Steele v. Mt. Hood Meadows Oregon, Ltd.*, 159 Or App 272, 276, 974 P2d 794, *rev den*, 329 Or 10 (1999) ("When one party seeks to contract away liability for its own negligence in advance of any harm, the intent to do so must be clearly and unequivocally expressed." (Internal quotation marks omitted.)). Moreover, it is contrary to Oregon landlord-tenant law, which expressly provides that tenants may not "deliberately or negligently destroy" the premises, ORS 90.325(8), and which permits landlords to bring actions for damages for violations of that obligation, ORS 90.400(11).

We conclude that the trial court erred in entering summary judgment dismissing USAA's subrogation claim.

Reversed and remanded.

---

[3] Thus, we need not debate the dissent on the question whether the broader policy reflected in the *Sutton* line of cases should be adopted as Oregon law.

**ARMSTRONG, J.,** dissenting.

I disagree first with the majority's interpretation of the rental agreement. In my view, the agreement shows that the parties intended that plaintiff would bear the risk of loss for damage to the premises due to fire. Despite provisions assigning responsibility to defendant for damage caused by negligence, which the majority finds conclusive, other provisions of the agreement permit an inference that the parties intended that defendant would be responsible for damage to his own personal property only and not for damage to the premises. For example, the agreement provides that plaintiff is not responsible for defendant's *personal property*, and advises defendant to purchase renter insurance to protect himself "in the event of loss." Paragraph 13 of the agreement provides that plaintiff "will not be responsible in any way for loss/damage to articles or property belonging to the tenant/s" and in capital letters, provides that defendant "should maintain fire and theft insurance *for his / her property.*" (Emphasis added.) Thus, the agreement emphasizes defendant's responsibility to obtain insurance *for his own property* and twice disclaims plaintiff's responsibility for defendant's personal property.

The agreement's only reference to fire insurance is in a paragraph about defendant's responsibility *for his own belongings*. The agreement nowhere suggests or imposes an obligation on defendant to obtain fire insurance for the premises. In light of the explicit provisions assigning to defendant responsibility for damage to his own property due to fire loss, I conclude that had the parties intended in this month-to-month tenancy for defendant also to bear responsibility for fire loss to the premises, the agreement would have listed that responsibility among the many explicit obligations placed on defendant and the disclaimers made by plaintiff.

Thus, viewing the agreement as a whole, I conclude that, although it places general responsibility on defendant for damages caused by his negligence, the specific provisions relating to fire loss place the risk of fire loss to the premises on plaintiff. Because the rental agreement contemplates that

plaintiff will be responsible for fire loss to the premises, I conclude that plaintiff has waived any claim against defendant for damages due to fire loss.

If the provisions of the agreement on which I rely do not unambiguously require the conclusion that the parties intended the risk of loss of the premise due to fire to fall on plaintiff, they at least give rise to an ambiguity as to the parties' intentions. Ordinarily, an ambiguity in an agreement would preclude summary judgment. However, because there is no extrinsic evidence bearing on the parties' intentions, no factual dispute exists. Accordingly, the meaning of the agreement remains a legal question of the court. *See Zygar v. Johnson*, 169 Or App 638, 643, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001). Construing the agreement against plaintiff, as the drafter, I would reach the same conclusion that plaintiff has waived any claim against defendant for damages due to fire loss. *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 22 P3d 739 (2000).

My conclusion is driven in part by what I believe is the fundamentally correct social policy underlying the decisions of those courts applying the holding of *Sutton v. Jondahl*, 532 P2d 478 (Okla Ct App 1975), or deciding independently of *Sutton* that, absent an express provision to the contrary, insurers who provide fire insurance to landlords should bear the risk of loss of fire due to the negligence of the tenant.

"This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises. * * * To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or that if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from a loss during his occupancy. * * * Basic equity and fundamental justice upon

which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it."

*Sutton*, 532 P2d at 482. As the Utah Court of Appeals said in *GNS Partnership v. Fullmer*, 873 P2d 1157, 1162 (Utah Ct App 1994):

"The insurer knows the risk that it is undertaking when insuring a rental property. It insures the building for the use for which it is intended. While it may not have control over who the individual tenants are, it can increase its premiums to reflect increased risks presented by changing tenant use. Likewise, it can require the landlord to undertake any number of safety and structural precautions. We believe the landlord is the party in the best position to assume such responsibilities[.]"

In my view, the policy discussed in the cited cases is the correct one and requires the conclusion that, unless an agreement provides expressly that the tenant is to provide fire insurance for the premises, the risk of loss for fire damage to the premises should remain with the landlord and its property insurer, which accepted premiums to take on the risk of fire damage to the premises due to negligence. In this case, that policy requires an affirmance of the trial court's ruling. Accordingly, I dissent.