Argued and submitted December 5, 2022, reversed and remanded
January 5, 2023

BIRDNEST MOBILE ESTATES, LLC,
*Plaintiff-Appellant,*

*v.*

MCH PROPERTY MANAGEMENT, LLC,
dba Partners Property Management & Sales,
*Defendant-Respondent.*

Deschutes County Circuit Court
20CV07846; A176571

524 P3d 993

Plaintiff appeals a judgment dismissing its complaint after various motions for summary judgment were decided, raising two assignments of error. In plaintiff's first assignment of error, it contends that the trial court erred when it denied plaintiff's motion for summary judgment against defendant's counterclaim. In plaintiff's second assignment of error, it contends that the trial court erred when it granted defendant's motion for summary judgment against plaintiff's breach of contract claim based on the affirmative defense of waiver. Defendant's waiver defense was premised on a contractual obligation for plaintiff to procure insurance naming defendant as an additional insured. *Held*: Regarding plaintiff's first assignment of error, that assignment was rendered moot by defendant's voluntary dismissal of its counterclaim. Regarding plaintiff's second assignment of error, the trial court erred in granting defendant's motion for summary judgment. Although plaintiff had agreed to procure insurance naming defendant as an additional insured, defendant presented no evidence from which all reasonable factfinders would have to conclude that the insurance would cover the loss arising from defendant's conduct.

Reversed and remanded.

Alison M. Emerson, Judge.

Ryan C. Kaiser argued the cause for appellant. Also on the briefs was Broken Top Law, LLC.

Leslie A. Kocher-Moar argued the cause for respondent. Also on the brief were Megan R. Ferris and MacMillan, Scholz & Marks, LLC.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Plaintiff, Birdnest Mobile Estates, LLC (Birdnest), appeals a judgment dismissing its complaint after various motions for summary judgment were decided, raising two assignments of error. In Birdnest's first assignment of error, it contends that the trial court erred "when it denied [Birdnest's] motion for summary judgment against defendant [MCH Property Management, LLC's (MCH's)] second counterclaim for breach of contract." In Birdnest's second assignment of error, it contends that the trial court erred "when it granted [MCH's] motion for summary judgment against [Birdnest's] breach of contract claim based on the affirmative defense of waiver." For the reasons below, we conclude that Birdnest's first assignment of error is moot.[1] We also conclude that the trial court erred in granting MCH's motion for summary judgment on Birdnest's breach of contract claim against MCH. We reverse and remand.

## I.   BACKGROUND

For the purposes of our analysis, certain historical facts are undisputed.

A.  *The Parties, The Management Agreements, and Insurance Policies*

Birdnest is owner of a mobile home park. Birdnest and MCH entered in to two consecutive property management agreements that provided for MCH to serve as property manager for the mobile home park. Those agreements, which were in effect from May 16, 2016, through approximately March 17, 2017, provided:

"[Birdnest] shall procure and maintain general liability insurance with coverage of not less than $500,000.00

---

[1] Neither party addresses whether, given the procedural posture of this case, the denial of Birdnest's motion for summary judgment is reviewable on appeal. *See Frontgate Properties, LLC v. Bennett*, 261 Or App 810, 812 n 2, 324 P3d 483, *rev den*, 356 Or 400 (2014) (noting as "a general rule, the denial of a summary judgment motion is not reviewable on appeal" but that that rule "has exceptions"); *Asman v. State of Oregon*, 210 Or App 369, 372-73, 150 P3d 1101 (2007) (discussing exceptions). Because we conclude that Birdnest's first assignment of error is moot, we express no opinion as to the reviewability of a denial of a motion for summary judgment in this procedural posture.

combined single limit. [Birdnest] shall provide proof of insurance, naming [MCH] as additional insured."

Thus, under the management agreements, Birdnest was obligated to obtain general liability insurance naming MCH as an additional insured.

Birdnest did maintain general liability insurance coverage while the property management agreements were in effect. Birdnest's liability insurance provided coverage to any person or organization while the person or organization was acting as Birdnest's "real estate manager," but did not specifically name MCH as an insured.[2]

B.  *The Tenant Suit*

On April 13, 2017, two tenants of the park filed a lawsuit (the Tenant Suit) against Birdnest and its owner, Bird. That suit alleged (1) Birdnest and Bird failed to maintain the premises in a habitable condition in violation of ORS 90.320, by failing to maintain the plumbing system, causing sewage flows in to the tenants' space; (2) Birdnest and Bird failed to maintain the premises in a habitable condition in violation of ORS 90.320, by allowing the tenants' space to become "inundated with filth and contaminated sewage and soil"; and (3) a private nuisance claim pursuant to ORS 105.505.

On September 6, 2018, the trial court in the Tenant Suit entered a judgment in favor of the tenants and against Birdnest and Bird. That judgment awarded the tenants

---

[2] The policies provided:

"SECTION II - WHO IS AN INSURED

   "1. If you are designated in the Declarations as:

   "* * * * *

   "c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   "* * * * *

   "2. Each of the following is also an insured:

   "* * * * *

   "b. Any person (other than your 'employee' or 'volunteer worker'), or any organization while acting as your real estate manager."

$3,125 in economic damages for reduced rental value on their habitable condition claims and, on their private nuisance claim, awarded the tenants $500 in economic damages and $90,000 in noneconomic damages. It also awarded attorney fees in favor of the tenants.

C.  *Birdnest's Suit Against MCH*

Birdnest then filed the instant suit against MCH, bringing a single claim for breach of contract. As alleged by Birdnest, MCH was "grossly negligent in managing the Park," and through its grossly negligent conduct "materially breached its obligations" under the management agreements. Birdnest alleges that MCH's breach of the management agreements was the cause of the Tenant Suit. The damages sought by Birdnest consisted of the amount of Birdnest's attorney fees incurred in defending the Tenant Suit, and an amount equal to the money awards and post-judgment interest awarded to the tenants in the Tenant Suit. Birdnest also sought attorney fees in the litigation of its action against MCH.

MCH's answer alleged, as an affirmative defense, that "Birdnest's claims are barred by the doctrines of waiver, estoppel, and/or laches." Additionally, MCH asserted two counterclaims: (1) for attorney fees and (2) for breach of the management agreements. With regard to the latter, MCH alleged that the management agreements required Birdnest to "[p]rocure and maintain general liability insurance *** naming [MCH] as additional insured," and that "[b]y failing to provide adequate insurance coverage to [MCH], Birdnest has breached" the management agreements.

Additionally, MCH's insurance carrier tendered Birdnest's action against MCH to one of Birdnest's insurance carriers for defense and indemnification, taking the position that MCH was an insured under Birdnest's insurance policy. Birdnest's carrier denied coverage, asserting, among other points, that "[t]he coverage grant of the *** [p]olicy provides coverage for those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies," and Birdnest's suit against MCH "manifestly is not seeking damages for bodily injury or property damage."

The carrier also asserted that the claims in the Tenant Suit would not have been covered by the policy.

Birdnest and MCH then filed various motions for summary judgment. As relevant here, Birdnest moved for summary judgment against MCH's second counterclaim, arguing that it did not breach the insurance coverage requirement in the management agreements, because its insurance policies provided coverage for its "real estate manager," and that MCH was covered under that provision. MCH filed a cross-motion for summary judgment as to its second counterclaim, contending that Birdnest breached the management agreements by "failing to obtain an additional insured endorsement" in favor of MCH. MCH argued that "[b]eing named an additional insured on a policy is a specific designation conferred on a party by endorsement" and such coverage is "much broader than coverage afforded (if any) under the real estate manager provision."

The trial court denied both Birdnest's motion for summary judgment as to MCH's second counterclaim and MCH's cross-motion for summary judgment as to that counterclaim. The court explained that "the undisputed facts do establish that [Birdnest] did not keep [its] agreement [to] provid[e] proof of insurance with [MCH] named as an additional insured with the appropriate general liability policy and policy amounts." Nevertheless, it denied MCH's cross-motion for summary judgment, noting that MCH had not established damages regarding the breach, insofar as it did not establish that, if Birdnest had obtained insurance naming MCH as an additional insured, that insurance would have covered the claims at issue in Birdnest's suit against MCH.

MCH also moved for summary judgment as to Birdnest's breach of contract claim, arguing that Birdnest "waived" its claim against MCH "by agreeing to obtain insurance for the benefit of [MCH]." The trial court granted that motion, concluding that Birdnest waived the claim by "failing to fully comply with the portion of the management agreement that required that [MCH] be named as an additional insured on any insurance policy and that proof or copy of that be provided to [Birdnest]."

Subsequently, MCH moved to dismiss its second counterclaim pursuant to ORCP 54, and Birdnest requested to be designated as the prevailing party on that claim. The trial court dismissed the second counterclaim, determined that Birdnest did not prevail on MCH's second counterclaim, that Birdnest would not "be entitled to attorney fees or costs associated with the dismissal of the claim," that MCH was the only prevailing party in the case, and that MCH was entitled to attorney fees.[3] There no longer being any live claims in the case, the trial court entered a general judgment, which Birdnest now appeals.

## II. ANALYSIS

### A. *Birdnest's First Assignment of Error*

In its first assignment of error, Birdnest contends that the trial court erred in denying its motion for summary judgment as to MCH's second counterclaim for breach of the insurance agreement's requirement that Birdnest "procure and maintain general liability insurance *** naming [MCH] as additional insured."

On appeal, MCH takes the position that that issue has been rendered moot by its voluntary dismissal of its second counterclaim (its breach of contract claim against Birdnest for failure to obtain insurance) pursuant to ORCP 54, and notes that Birdnest does not assign any error to dismissal of the counterclaim. Birdnest responds that "the decision on appeal here—determining whether the Circuit Court erred in denying [Birdnest's] motion for summary judgment—will have a practical effect on the parties and their respective rights to an award of attorney fees." In Birdnest's view, "[h]ad the Circuit Court granted [Birdnest's] motion for summary judgment against [MCH's] counterclaim for breach of contract, [Birdnest] would have been the prevailing party with respect to that counterclaim

---

[3] We note that under ORCP 54 A(3), the dismissed party is the prevailing party "unless the circumstances indicate otherwise"—a caveat which the trial court determined to be applicable in this case. *See* ORCP 54 A(3) ("When an action is dismissed under this section, the judgment may include any costs and disbursements, including attorney fees, provided by contract, statute, or rule. Unless the circumstances indicate otherwise, the dismissed party shall be considered the prevailing party.").

and entitled to an award of attorney fees pursuant to the property management agreements."

We agree with MCH that the issue raised by this assignment of error is moot. As we recently explained in *Chinese Consolidated Benevolent Assn. v. Chin*, 316 Or App 514, 521, 504 P3d 1196 (2021), *rev den*, 369 Or 855 (2022):

> "As a matter of Oregon law, *** the voluntary dismissal of a complaint renders the underlying merits of the plaintiff's claims—as well as the underlying merits of a motion attacking those claims—moot. Dismissal means that there are no longer any merits claims or defenses for the court to resolve; doing so would be advisory. And, once an underlying claim becomes moot, a court lacks jurisdiction to resolve its merits solely for the purpose of determining attorney fee entitlement."

Put another way, "our cases have rejected the notion that a court retains jurisdiction to resolve moot merits issues simply for the purpose of determining attorney-fee entitlement." *Id.* at 523; *see also Nordbye v. BRCP/GM Ellington*, 271 Or App 168, 181-84, 349 P3d 639 (2015) (holding that potential entitlement to attorney fees does not permit a court to resolve the merits of an otherwise moot claim); *Birchall v. Miller*, 314 Or App 521, 523, 497 P3d 1268 (2021) ("[O]ur decision in *Nordbye* disposes of plaintiffs' contention that a trial court has jurisdiction to resolve an otherwise moot merits claim simply for the purpose of awarding prevailing-party attorney fees in connection with that claim.").

Because the issue raised in Birdnest's first assignment of error—*i.e.*, whether the trial court erred in denying its motion for summary judgment—is moot, we will not consider it.[4]

---

[4] On appeal, Birdnest cites *Brennan v. La Tourelle Apartments*, 184 Or App 235, 242, 56 P3d 423 (2002), for the proposition that "the award or denial of attorney fees to either party has a practical effect on both parties."

We have explained that *Brennan* "stands for the proposition that, upon dismissing a proceeding as moot, a court retains jurisdiction to determine what party qualifies as the prevailing party based on the dismissal and, further, to award prevailing-party attorney fees where a statute or agreement authorizes an award of fees to the prevailing party." *Birchall*, 314 Or App at 526. It does not suggest that a court should issue an advisory opinion on the merits of a moot claim for the purpose of determining whether plaintiff is entitled to attorney fees. *Chinese Consolidated Benevolent Assn.*, 316 Or App at 521 ("Dismissal means

B.   *Birdnest's Second Assignment of Error*

As noted, MCH filed a motion for summary judgment as to Birdnest's breach of contract claim, arguing that Birdnest waived its claim against MCH "by agreeing to obtain insurance for the benefit of PPM." The trial court granted that motion. In its second assignment of error, Birdnest argues that the trial court "erred by dismissing [Birdnest's] breach of contract claims based on the affirmative defense of waiver."

"On review of a grant of summary judgment, we must view the summary judgment record in the light most favorable to the nonmoving party—in this case, plaintiff—and determine whether there are genuine issues of material fact." *Harmon v. State of Oregon*, 320 Or App 406, 411, 514 P3d 1131 (2022) (internal quotation marks omitted). Because waiver as asserted by MCH is an affirmative defense, "summary judgment is appropriate only if [MCH] establishes all of the elements of the defense as a matter of law." *Id.* (internal quotation marks omitted). "Our task on appeal, as circumscribed by our standard of review, is to determine whether the uncontroverted evidence presented by defendant in support of its motion for summary judgment is such that all reasonable factfinders would have to find in defendant's favor on its affirmative defense." *Id.* (internal quotation marks omitted). "In other words, we must be able to conclude that no reasonable factfinder could reject defendant's defense." *Id.* (internal quotation marks omitted).

On appeal, in contending that the trial court erred, Birdnest argues that "waiver does not apply unless the claim sought to be barred would have been covered by the insurance to be procured pursuant to the agreement." As Birdnest sees it, "because the insurance coverage that [Birdnest] agreed to procure for [MCH] does not apply to [Birdnest's] breach of contract action as a matter of law, the Circuit Court erred in granting summary judgment against [Birdnest's] breach of contract claim based on the affirmative defense of waiver." In other words, Birdnest contends

that there are no longer any merits claims or defenses for the court to resolve; doing so would be advisory.").

that it did not waive its claim against MCH, because the insurance it was required to procure under the management agreements would not have covered the claims at issue in its suit against MCH.

MCH responds that "[t]he issue presented by the defense [of waiver] is allocation of risk of loss." As MCH sees it, the requirement that Birdnest obtain general liability insurance coverage in the management agreements naming MCH as an additional insured contemplated a "risk of loss" that Birdnest and MCH "might be sued for, and held liable for, something related to the mobile home park," which is what occurred here, and the liability that Birdnest "seeks to pass along to [MCH] is precisely the type of risk that was the subject of the additional insured language in the property management agreements."

In pressing their arguments concerning waiver, both Birdnest and MCH rely on three cases that address when a contractual agreement to procure insurance coverage waives claims between the contracting parties: *Waterway Terminals v. P. S. Lord*, 242 Or 1, 406 P2d 556 (1965); *Koennecke v. Waxwing Cedar Prod.*, 273 Or 639, 543 P2d 699 (1975); and *Koch v. Spann*, 193 Or App 608, 92 P3d 146 (2004).

In *Waterway Terminals*, the owner of a dock and warehouse hired the defendants to build a cargo conveyor system and expressly contracted to obtain "[f]ire insurance in the amount equal to the value of the equipment as required for the [defendants'] protection during the erection of the equipment." 242 Or at 11. The owner "procured no fire insurance for the protection of [defendants] but only for its own protection." *Id.* at 14. The defendants caused a fire, and the owner brought an action against them alleging that their negligence was the cause of the fire. *Id.* at 6. The court held that the owner's breach of its promise to obtain fire insurance was a "complete defense to the claim of the [owner] to recover for damage to the cargo lifts," noting that fire insurance "'universally covers loss by fire occurring from the kind of negligence here involved.'" *Id.* at 22-23 (quoting *General Mills v. Goldman*, 184 F2d 359, 364-65 (8th Cir 1950)).

In so ruling, the court cited several cases from other jurisdictions in which the courts had "held that an agreement of the parties to a lease obligating the landlord to carry insurance on the leased premises is a complete defense to an action by the landlord, or by his insurer as subrogee, against the tenant for negligence in causing a fire[.]" *Id.* at 21. The court described the "controlling consideration" in those cases to be the "general understanding of what fire insurance means." *Id.* at 22-23.

In *Koennecke,* the plaintiff, who was owner of a sawmill, agreed in a lease with the defendant to "maintain fire insurance on the leased property for the benefit of plaintiff and [the defendant]." 273 Or at 645. A fire destroyed the buildings and equipment at the sawmill, and the owner sought to recover from the allegedly negligent defendant. *Id.* Relying on *Waterway Terminals*, the court held that "the fire insurance clause constitutes a complete defense to plaintiff's first cause of action [to recover damages for the destruction of real property improvements and equipment]." 273 Or at 640, 646.

Finally, in *Koch,* the court held that a landlord's lawsuit to recover from a tenant for negligently starting a fire was not barred, because the landlord had not contractually agreed to procure fire insurance, and there was "nothing in the rental agreement that may be fairly read as a waiver of plaintiff's right to pursue a claim against defendant for damage that has been caused to the premises by defendant's negligence." 193 Or App at 614. The court explained that the "litigation bar in [*Waterway Terminals* and *Koennecke*] was predicated on the need to give the tenant the benefit of its bargain, namely, fire insurance," but in *Koch*, "insurance simply was not bargained for one way or the other," so there was no basis "to conclude that plaintiff is barred from pursuing any claim against defendant." *Id.* at 619.

We understand the rule applied in *Waterway Terminals* and *Koennecke*, and considered in *Koch*, to be that where the bargained for but not obtained insurance would have covered the damages at issue in the case, the party who agreed but failed to obtain such insurance waived its claim against the contractual counterparty. In this case, there is

no dispute that MCH bargained to be covered as a named additional insured in a "general liability insurance" policy with coverage "of not less than $500,000.00." And that clause appears to be an allocation of risk, just as MCH contends. But MCH presented no evidence from which all reasonable factfinders would have to conclude that the insurance contemplated by that clause would "cover[] loss" arising from MCH's conduct alleged here, *Waterway Terminals*, 242 Or at 22—*i.e.*, the loss allegedly caused by MCH breaching its contract with Birdnest through gross negligence.[5] Thus, there is no basis to conclude that, in order to give MCH the "benefit of its bargain" with Birdnest for Birdnest to purchase insurance naming MCH as an additional insured, Birdnest's claims against MCH must be barred by the doctrine of waiver. *Koch*, 193 Or App at 619. Consequently, we conclude that the trial court erred in granting MCH's motion for summary judgment on Birdnest's breach of contract claim and reverse and remand.

Reversed and remanded.

---

[5] On appeal, MCH argues that "[t]here was no admissible evidence in the record that Defendant [MCH] would not have been covered had Plaintiff [Birdnest] complied with its contractual obligations." But, as explained above, on its affirmative defense, the question is whether MCH established all of the elements of the defense as a matter of law.